**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| BOLTEX MANUFACTURING COMPANY, L.P. and WELDBEND CORPORATION, | |
| Plaintiffs and Counter Defendants, | |
| vs. | C.A. No. 4:17-cv-1400 |
| ULMA FORJA, S. COOP. a/k/a ULMA PIPING and ULMA PIPING USA CORP., | |
| Defendants and Counter Plaintiffs. | |

**DEFENDANTS AND COUNTER PLAINTTIFS ULMA FORJA, S. COOP A/K/A ULMA
PIPING AND ULMA PIPING USA CORP.'S
ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS**

DECHERT LLP

Andrew J. Levander
Mauricio A. España
1095 Avenue of the Americas
3 Bryant Park
New York, New York 10036
(212) 698-3500

*Counsel for Defendants/Counter-Plaintiffs*

**OF COUNSEL:**

David Gerger
dgerger@gkhfirm.com
TX Bar No. 07816360
GERGER, KHALIL & HENNESSY
1001 Fannin, Suite 2450
Houston, Texas  77002
Phone: 713-224-4400
Fax: 713-224-5153

Defendants Ulma Forja, S. Coop. A/K/A Ulma Piping ("Ulma Forja") and Ulma Piping USA Corp. ("Ulma USA") (collectively "Defendants" or "Counter-Plaintiffs") file this Answer, Affirmative Defenses, and Counterclaims to Plaintiffs' Complaint (the "Complaint"). Defendants respond as follows to the enumerated paragraphs of the Complaint:

## I.    ANSWER TO INTRODUCTION

1.    The allegations of Paragraph 1 consist of argument and legal conclusions to which no response is necessary. To the extent a response is necessary, Defendants admit they sell flanges in the U.S. market and deny the remaining allegations in Paragraph 1.

## II.    ANSWER TO THE PARTIES

2.    Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 2 and therefore deny them.

3.    Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 3 and therefore deny them.

4.    Ulma Forja admits the allegations in Paragraph 4.

5.    Ulma USA admits the allegations in Paragraph 5.

## III.    ANSWER TO JURISDICTION AND VENUE

6.    The allegations of Paragraph 6 consist of argument and legal conclusions to which no response is necessary. To the extent a response is necessary, Defendants admit that this Court has jurisdiction over the subject matter of this lawsuit, but deny that Ulma has violated any law or statute.

7.    The allegations of Paragraph 7 consist of argument and legal conclusions to which no response is necessary. To the extent a response is necessary, Defendants deny the allegations in Paragraph 7.

8.     The allegations of Paragraph 8 consist of argument and legal conclusions to which no response is necessary.  Defendants admit that Ulma Forja (and not Ulma USA) manufactures forged parts, including carbon steel flanges in a variety of materials, types, and sizes. Defendants admit that they offer for sale, and/or sell carbon steel flanges in various pressure classes to customers located in Houston, throughout Texas, and elsewhere in the United States.

9.     The allegations of Paragraph 9 consist of argument and legal conclusions to which no response is necessary.  To the extent a response is necessary, Defendants admit that venue is proper in this Court and otherwise deny the allegations in Paragraph 9.

### IV.     ANSWER TO FACTUAL BACKGROUND

**A.     ANSWER TO THE PRODUCTS AT ISSUE—CARBON STEEL FLANGES**

10.     Defendants lack knowledge or information sufficient to form a belief as to the meaning of the terms "important" and "mission-critical" and therefore deny those allegations in Paragraph 10. Defendants otherwise admit the allegations of Paragraph 10.

11.     Defendants lack knowledge or information sufficient to form a belief as to the meaning of the term "typical flanges" or as to the contents of the photographs in Paragraph 11, and therefore, deny those allegations.  Defendants otherwise admit the allegations in Paragraph 11.

12.     Defendants lack knowledge or information sufficient to form a belief as to the allegation that carbon steel "is the most commonly used material for flanges" or that it is "relatively low in cost" in Paragraph 12 or as to the meaning of "primary" in Footnote 1, and therefore deny those allegations.  Defendants otherwise admit the allegations in Paragraph 12.

## **B.     ANSWER TO THE PROPERTIES OF CARBON STEEL**

13.     Defendants lack knowledge or information as to the meaning of the terms "with other elements" and "small quantities" and therefore deny those allegations in Paragraph 13. Defendants otherwise admit the allegations in Paragraph 13.

14.     Defendants lack knowledge or information sufficient to form a belief as to the image in Paragraph 14 and therefore deny that allegation.  Defendants otherwise admit the allegations in Paragraph 14.

15.     Defendants admit the allegations in Paragraph 15.

16.     Defendants lack knowledge or information sufficient to form a belief as to the meaning of the terms "most stable" or "small concentration" or to the contents of the image in Paragraph 16 and therefore deny those allegations.  Defendants deny that the inclusion of carbon in alpha iron is called ferrite or that "'alpha iron,' a body centered cubic (BCC) structure" has 9 atoms.

17.     Defendants lack knowledge or information sufficient to form a belief as to the contents of the image in Paragraph 17 and therefore deny that allegation.  Defendants further deny that the inclusion of carbon in gamma iron is called austenite and that the "face-centered cubic (FCC) structure" has 14 atoms.  Defendants otherwise admit the allegations in Paragraph 17.

18.     Defendants lack knowledge or information sufficient to form a belief as to the term "considerably more" and therefore deny the allegation in Paragraph 18.

19.     Defendants lack knowledge or information sufficient to form a belief about the terms "attempts to revert" and "falls out" and therefore deny those allegations in Paragraph 19. Defendants otherwise admit the allegations in paragraph 19.

20.     Defendants lack knowledge or information sufficient to form a belief about the use of the term "generally" and therefore deny the allegations in Paragraph 20.

21.     Defendants deny the allegations Paragraph 21.

22.     Defendants lack knowledge or information sufficient to form a belief as to the terms "heat treatment" and "often" and therefore deny those allegations in Paragraph 22. Defendants otherwise admit the allegations in Paragraph 22.

**C.     ANSWER TO THE PROCESS AT ISSUE—NORMALIZATION OF STEEL**

23.     Defendants lack knowledge or information sufficient to form a belief as to the terms "normalizing," "most extensively," "heat treatment," "relatively simple," and "more fine-grained" and therefore deny the allegations in Paragraph 23.

24.     Defendants lack knowledge or information sufficient to form a belief as to the terms "normalizing" and "distinct" and therefore deny the allegations in Paragraph 24.

25.     Defendants lack knowledge or information sufficient to form a belief as to the term "significant" and "normalizing" and therefore deny those allegations in Paragraph 25. Defendants otherwise admit the allegations in Paragraph 25.

**D.     ANSWER TO THE ASTM SPECIFICATIONS APPLICABLE TO CARBON STEEL FLANGES**

26.     Defendants deny the allegations in Paragraph 26, except that Defendants admit that this paragraph refers to the American Society of Testing and Materials ("ASTM") standard A105 ("ASTM A105") to which the Court is respectfully referred. Defendants deny any characterization of ASTM A105 in Paragraph 26.

27.     Defendants lack knowledge or information sufficient to form a belief about the allegations in Paragraph 27, and therefore, Defendants deny the allegations in Paragraph 27, except that Defendants admit this paragraph refers to ASTM A105 and ASTM standard A961 ("ASTM A961") to which the Court is respectfully referred.

**E.    ANSWER TO BOLTEX'S AND WELDBEND'S COMPLIANCE WITH ASTM A105**

28.    Defendants admit that Plaintiffs market a variety of types and sizes of carbon steel flanges. Defendants lack knowledge or information sufficient to form a belief as to the remaining allegations in Paragraph 28.

29.    Defendants lack knowledge or information sufficient to form a belief as to the allegations in Paragraph 29 and therefore deny those allegations.

30.    Defendants lack knowledge or information sufficient to form a belief as to the allegations in Paragraph 30 and therefore deny those allegations.

31.    Defendants lack knowledge or information sufficient to form a belief as to the allegations in Paragraph 31 and therefore deny those allegations.

**F.    ANSWER TO DEFENDANTS FALSELY AND MISLEADINGLY ADVERTISE THEIR CARBON STEEL FLANGES AS NORMALIZED AND COMPLYING WITH ASTM A105**

32.    Defendants admit the allegations in Paragraph 32.

33.    Defendants admit the allegations in Paragraph 33.

34.    Defendants admit that Ulma Forja (and not Ulma USA) manufactures forged parts, including carbon steel flanges in a variety of materials, types, and sizes and that Defendants offer for sale, and/or sell carbon steel flanges in various pressure classes to customers located in Houston, throughout Texas, and elsewhere in the United States.  Defendants admit that in certain MTRs, Ulma Forja has described flanges as "A105N" and "normalized at 900 C and allowed to cool in still air." Defendants further admit that on certain flanges, Ulma Forja stamps "A105N" on the flanges themselves. Defendants deny the remaining allegations in Paragraph 34.

35.    Defendants admit that in certain MTRs, Ulma Forja has described flanges as "A105N" and "normalized at 900 C and allowed to cool in still air." Defendants further admit that

on certain flanges, Ulma Forja stamps "A105N" on the flanges themselves. Defendants deny the remaining allegations in Paragraph 35.

36.     Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 36 and therefore deny those allegations.

37.     Defendants deny the first allegation in Paragraph 37 and that "[e]nd-users are less concerned about where a flange is manufactured provided that the flange meets the customer's specifications and any applicable standards including ASTM." Defendants otherwise lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 37 and therefore deny those allegations.

38.     Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 38 and therefore deny those allegations.

**G.     ANSWER TO DEFENDANTS' REPRESENTATIONS ABOUT THEIR FLANGES ARE FALSE AND MISLEADING**

39.     The allegations in Paragraph 39 amount to arguments and legal conclusions and therefore require no response. To the extent a response is required, Defendants deny the allegations in Paragraph 39.

40.     Defendants lack knowledge or information sufficient to form a belief as to the allegations in Paragraph 40 and therefore deny those allegations.

41.     Defendants lack knowledge or information sufficient to form a belief as to the allegations in Paragraph 41 and therefore deny those allegations.

42.     The allegations in Paragraph 42 amount to arguments and legal conclusions and therefore require no response. To the extent a response is required, Defendants deny the allegations in Paragraph 42.

43.     Defendants deny the allegations in Paragraph 43.

44.     The allegations in Paragraph 44 amount to arguments and legal conclusions and therefore require no response.  To the extent a response is required, Defendants deny the allegations in Paragraph 44.

45.     The allegations in Paragraph 45 amount to arguments and legal conclusions and therefore requires no response.  To the extent a response is required, Defendants admit that this paragraph refers to ASTM A105 to which the Court is respectfully referred and otherwise deny the allegations in Paragraph 45.

46.     The allegations in Paragraph 46 amount to arguments and legal conclusions and therefore require no response.  To the extent a response is required, Defendants lack knowledge or information sufficient to form a belief as to the allegations in Paragraph 46 and otherwise deny the allegations in Paragraph 46.

47.     The allegations in Paragraph 47 amount to arguments and legal conclusions and therefore require no response.  To the extent a response is required, Defendants lack knowledge or information sufficient to form a belief as to the allegations in Paragraph 47 and otherwise deny the allegations in Paragraph 47.

## Answer to COUNT I:

### FALSE ADVERTISING IN VIOLATION OF
### THE LANHAM ACT, 15 U.S.C. § 1125(A)

48.     Defendants incorporate by reference their responses to Paragraphs 1 through 47 of the Complaint.

49.     Defendants deny the allegations of Paragraph 49.  Defendants admit that they sell and distribute carbon steel flanges to various places within the United States for use in the oil and gas, petrochemical, transmission, engineering, construction, and other industries.  Defendants admit that in certain MTRs, Ulma Forja has described flanges as "A105N" and "normalized at 900

C and allowed to cool in still air." Defendants further admit that on certain flanges, Ulma Forja stamps "A105N" on the flanges themselves. Defendants otherwise deny the allegations of Paragraph 49.

50. The allegations in Paragraph 50 amount to arguments and legal conclusions and therefore require no response. Defendants admit that in certain MTRs, Ulma Forja has described flanges as "A105N" and "normalized at 900 C and allowed to cool in still air." Defendants further admit that on certain flanges, Ulma Forja stamps "A105N" on the flanges themselves. To the extent a response is otherwise required, Defendants deny the allegations in Paragraph 50.

51. The allegations in Paragraph 51 amount to arguments and legal conclusions and therefore require no response. To the extent a response is required, Defendants deny the allegations in Paragraph 51.

52. The allegations in Paragraph 52 amount to arguments and legal conclusions and therefore require no response. To the extent a response is required, Defendants deny the allegations in Paragraph 52.

53. The allegations in Paragraph 53 amount to arguments and legal conclusions and therefore require no response. To the extent a response is required, Defendants deny the allegations in Paragraph 53.

54. The allegations in Paragraph 54 amount to arguments and legal conclusions and therefore require no response. To the extent a response is required, Defendants deny the allegations in Paragraph 54.

55. The allegations in Paragraph 55 amount to arguments and legal conclusions and therefore require no response. To the extent a response is required, Defendants deny the allegations in Paragraph 55.

56. The allegations in Paragraph 56 amount to arguments and legal conclusions and therefore require no response. To the extent a response is required, Defendants deny the allegations in Paragraph 56.

57. The allegations in Paragraph 57 amount to arguments and legal conclusions and therefore require no response. To the extent a response is required, Defendants deny the allegations in Paragraph 57.

<u>**Answer to COUNT II:**</u>

**UNFAIR COMPETITION IN VIOLATION OF
THE LANHAM ACT, 15 U.S.C. § 1125(A)**

58. Defendants incorporate by reference their responses to Paragraphs 1 through 57 of the Complaint.

59. The allegations in Paragraph 59 amount to arguments and legal conclusions and therefore require no response. Defendants admit that in certain MTRs, Ulma Forja has described flanges as "A105N" and "normalized at 900 C and allowed to cool in still air." Defendants further admit that on certain flanges, Ulma Forja stamps "A105N" on the flanges themselves. To the extent a response is otherwise required, Defendants deny the allegations in Paragraph 59.

60. The allegations in Paragraph 60 amount to arguments and legal conclusions and therefore require no response. To the extent a response is required, Defendants lack knowledge or information sufficient to form a belief as to the allegations in Paragraph 60 and therefore deny those allegations.

61. The allegations in Paragraph 61 amount to arguments and legal conclusions and therefore require no response. To the extent a response is required, Defendants deny the allegations in Paragraph 61.

62.     The allegations in Paragraph 62 amount to arguments and legal conclusions and therefore require no response.  To the extent a response is required, Defendants deny the allegations in Paragraph 62.

63.     The allegations in Paragraph 63 amount to arguments and legal conclusions and therefore require no response.  To the extent a response is required, Defendants deny the allegations in Paragraph 63.

64.     The allegations in Paragraph 64 amount to arguments and legal conclusions and therefore require no response.  To the extent a response is required, Defendants deny the allegations in Paragraph 64.

65.     The allegations in Paragraph 65 amount to arguments and legal conclusions and therefore require no response.  To the extent a response is required, Defendants deny the allegations in paragraph 65.

66.     The allegations in Paragraph 66 amount to arguments and legal conclusions and therefore require no response.  To the extent a response is required, Defendants deny the allegations in Paragraph 66.

67.     The allegations in Paragraph 67 amount to arguments and legal conclusions and therefore require no response.  To the extent a response is required, Defendants deny the allegations in Paragraph 67.

## Answer to COUNT III:

## COMMON LAW UNFAIR COMPETITION

68.     Defendants incorporate by reference their responses to Paragraphs 1 through 67 of the Complaint.

69.     The allegations in Paragraph 69 amount to arguments and legal conclusions and therefore require no response.  Defendants admit that in certain MTRs, Ulma Forja has described flanges as "A105N" and "normalized at 900 C and allowed to cool in still air." Defendants further admit that on certain flanges, Ulma Forja stamps "A105N" on the flanges themselves.  To the extent a response is otherwise required, Defendants deny the allegations in Paragraph 69.

70.     The allegations in Paragraph 70 amount to arguments and legal conclusions and therefore require no response.  To the extent a response is required, Defendants deny the allegations in Paragraph 70.

71.     The allegations in Paragraph 71 amount to arguments and legal conclusions and therefore require no response.  To the extent a response is required, Defendants deny the allegations in Paragraph 71.

72.     The allegations in Paragraph 72 amount to arguments and legal conclusions and therefore require no response.  To the extent a response is required, Defendants deny the allegations in Paragraph 72.

73.     The allegations in Paragraph 73 amount to arguments and legal conclusions and therefore require no response.  To the extent a response is required, Defendants deny the allegations in Paragraph 73.

74.     The allegations in Paragraph 74 amount to arguments and legal conclusions and therefore require no response.  To the extent a response is required, Defendants deny the allegations in Paragraph 74.

### ANSWER TO PLAINTIFFS' PRAYER FOR RELIEF

To the extent that Defendants are required to respond to the allegations contained within Plaintiffs' "Prayer for Relief" (located on pages 21–23 of the Complaint), Defendants deny those allegations and request judgment in their favor.  Defendants further deny that Plaintiffs are entitled

to any of the relief requested in the Complaint. To the extent not otherwise expressly admitted, Defendants deny any remaining allegations in the Complaint.

## V.     AFFIRMATIVE AND OTHER DEFENSES

1.     The Complaint, in whole or in part, fails to state a claim upon which relief can be granted.

2.     Plaintiffs' claims are barred in whole or in part because Plaintiffs lack standing.

3.     Plaintiffs' claims are barred in whole or in part because Defendants acted in conformity with applicable law.

4.     Plaintiffs' claims are barred in whole or in part by laches.

5.     Plaintiffs' claims are barred in whole or in part by the doctrine of unclean hands or *in pari delicto*.

6.     Plaintiffs' claims are barred in whole or in part by *res judicata* (or claim preclusion) and/or the doctrine of estoppel.  Last year, on or about June 30, 2016, Plaintiffs filed a petition with the United States International Trade Commission (the "ITC") relating to the importation of finished carbon steel flanges from Spain, Italy, and India.  In that ITC proceeding, Plaintiffs alleged that foreign manufacturers were selling flanges in the United States (which flanges were normalized and "fungible" with those produced by Plaintiffs), at less than fair value, thereby resulting in foreign imports experiencing a surge in the market share for normalized, carbon steel flanges.  Regarding their alleged damages, Plaintiffs testified before the ITC that they were "increasingly losing sales to unfairly-priced imported carbon steel flanges— based on price, and on price alone."  Plaintiffs prevailed before the ITC, resulting in the imposition of duties on finished carbon steel flanges imported from Spain, Italy, and India.  Less than a year after Plaintiffs initiated the ITC proceeding in June of 2016, Plaintiffs filed this lawsuit in which Plaintiffs now

blame their lost sales on alleged false advertising and unfair competition. Plaintiffs are seeking a double recovery by taking inconsistent positions before the ITC and this Court.

7. Plaintiffs' claims are barred in whole or part by the First Amendment.

8. Plaintiffs' claims are not within the zone of interests the Lanham Act is designed to protect.

9. There is no causal connection between the injuries allegedly sustained by Plaintiffs and Defendants' conduct.

10. Defendants were not the proximate cause of Plaintiffs' alleged injuries.

11. Plaintiffs are precluded from recovering the damages they seek from Defendants, in whole or in part, because any such damages were caused by the acts or omissions of parties or third parties with whom Defendants had no contractual or other relationship and over whom Defendants had no control or right of control.

12. Plaintiffs have not suffered any injury to a commercial interest in reputation or sales.

13. Defendants reserve the right to raise defenses as may be discovered during the course of these proceedings.

## VI.    COUNTERCLAIM

Defendants seek injunctive relief and damages against Counter-Defendants Boltex Manufacturing Company, L.P. ("Boltex") and Weldbend Corporation ("Weldbend") under the laws of the United States and the State of Texas, and states as follows:

## <u>NATURE OF THE COUNTERCLAIM</u>

1. Ulma Forja, S. Coop. a/k/a Ulma Piping ("Ulma Forja") and Ulma Piping USA Corp. ("Ulma USA") (collectively, "Counter-Plaintiffs") bring this action against Counter-Defendants Boltex and Weldbend (collectively, the "Counter-Defendants") to recover damages

resulting from Counter-Defendants' false designation of U.S. origin on their goods, false advertising, and unfair competition.

## PARTIES

2.     Counter-Plaintiff Ulma Forja is a manufacturing cooperative company, with its principal place of business at Barrio Zubillaga No. 3, 20560 Oñati (Gispuzkoa), Spain.

3.     Counter-Plaintiff Ulma USA is a Texas corporation that is authorized to do business in Texas with its principal place of business in Houston, Texas in Harris County.

4.     Counter-Defendant Boltex is a Texas limited partnership authorized to do business in Texas with its principal place of business located at 4901 Oates Rd., Houston, Texas 77013.

5.     Counter-Defendant Weldbend is a Delaware corporation with its principal place of business located at 6600 South Harlem Ave., Argo, Illinois 60501.

## JURISDICTION AND VENUE

6.     This Court has subject matter jurisdiction under 15 U.S.C. § 1125(a).

7.     This Court has supplemental jurisdiction over the claims in this Counterclaim that arise under the laws of the State of Texas pursuant to 28 U.S.C. § 1367(a) because the state law claims are so related to the federal claims that they form a part of the same case or controversy and derive from a common nucleus of operative facts.

8.     Venue is proper in this District under 28 U.S.C. § 1391(b).

## FACTUAL BACKGROUND

9.     Counter-Defendants advertise, promote, label, offer for sale, and distribute flanges and special forged products to consumers.  Some of Counter-Defendants' ASTM A105 carbon steel flanges and their high yield carbon steel flanges (e.g., ASTM A350 LF2, A694 F52, A694 F60, A694 F65, and A694 F70) compete directly with Counter-Plaintiffs' offerings in the carbon steel industry.

10. On information and belief, Counter-Defendants commercially advertise and promote these products through statements and representations on their websites, at trade shows, in product catalogs and price sheets, through social media, and through flyers and brochures, including but not limited to those described below, which are false and misleading statements and representations about the U.S. origin of Counter-Defendants' products.

11. Counter-Defendants have disseminated or caused to be disseminated commercial advertisements and promotional materials for their products that contain the statements:

a. "American-made;"

b. "Made in USA;"

c. "USA made;"

d. "Made in America;" and

e. "Made in the USA with USA Steel."

12. Additionally, on information and belief, Counter-Defendants represent that their products are "Made in the USA" on their product labeling and packaging materials.

13. Further, on information and belief, Counter-Defendants also represent in commercial advertisements and promotions that their products are made from materials of U.S. origin.

14. The following are statements and representations made on Boltex's website, http://www.boltex.com, accessed on August 6, 2018:





**custom forgings**     **quality flanges**

## about flanges

Boltex is a vertically-integrated manufacturer of quality, American-made forged steel flanges for the oil and gas, petrochemical, transmission, engineering and construction industries. Our products are sold exclusively through wholesale distributors.

This integrated approach allows Boltex to manage our in-house forging, heat treatment, metallurgical testing and robotic machining processes and thereby ensure the delivery of only the highest quality domestic flanges.

The Boltex commitment to quality is matched only by our on-time delivery performance made possible by our extensive finished flange and rough forging inventories.

15.     The following are statements and representation made in Weldbend's catalog, accessed on its website, www.weldbend.com, on August 6, 2018:

Made only from USA pipe, the elbows hot-formed at Weldbend are done to the highest quality standards in Weldbend's unique state-of-the-art processes.

As with the Weldbend elbows, all seamless tees formed at Weldbend are made with only the highest quality USA pipe.



Manufacturer of Product

Size     Wall Thickness     Material Specification

Heat Codes*

Description of designations:
WPB - ASTM A234 WPB
STD - Standard Weight
USA - NOTE: If Weldbend marks their fittings "Made in USA", it is your assurance that both the starting material and the complete production is of USA origin.
*All heat codes follow the material specification marking.

16.     Weldbend furthers its claims of being "American made" in statements and representations made in its price sheet, accessed from its website on August 6, 2018:



17.     Examples of Weldbend's packaging displaying iconic images of Uncle Sam and the American Flag and containing statements and representations such as "This product Made in the USA with USA Steel," "Boost the U.S.A.," and "comply with the 'Buy American Act'" can be found on various social media posts regarding Weldbend:



(from Instagram, accessed August 6, 2018).[1]



(from Instagram, accessed August 6, 2018).

---

[1] For social media posts, Counter-Plaintiffs redacted the pictures and names of individuals to protect their privacy.

18.     Boltex also represents in its "Certificate of Compliance," which it provides to customers and the public through its website, as well as certain MTRs, that "*All flanges bearing the 'BOLTEX' name have been manufactured in the U.S.A at our Houston, Texas facility.*" (emphasis added).

19.     Moreover, on information and belief, Counter-Defendants have intentionally induced and/or knew or had reason to know that distributors and other third parties who market and sell Counter-Defendants' products falsely advertise and promote the products as "Made in the USA" or "American Made" and Counter-Defendants failed to take steps to correct or stop the false and misleading statements. For example, the following are specific instances of distributors of Weldbend making representations for commercial sales purposes that Weldbend's products are made from American materials with American labor and are not "dumped from China":



(from Instagram, accessed August 6, 2018).

20.     Additionally, in a joint press release, titled "Boltex and Weldbend Corporation Applaud ITC Preliminary Injury Decision on Unfairly Traded Imports," dated August 12, 2016, the Counter-Defendants praised the preliminary ruling from the ITC against carbon steel imports from India, Italy, and Spain. At the bottom of the press release, Boltex promoted itself as a "vertically-integrated manufacturer of quality, American-made forged steel flanges" and Weldbend promoted itself as "The Standard" for weld fittings and weld flanges "[f]rom start to finish" (*i.e.*, from manufacturing to storing, organizing, and shipping).  And in a similar public statement made after the ITC's final ruling, both Counter-Defendants made the same statements promoting their products in a news story with CBS News Channel 10, dated July 12, 2017, called "U.S. Producers of Carbon Steel Flanges, Weldbend Corporation and Boltex Mfg. Co., Welcome Department of Commerce Final Determinations in Antidumping Duty and Subsidy Investigations."

21.     Counter-Defendants' commercial advertisements and promotions and statements to the public, including those made in the ITC proceeding against imports, both through explicit word statements and also the use of American imagery, separately or together, expressly or implicitly represent to customers of carbon steel flanges that Counter-Defendants' products are all American made from American steel.

22.     Thus, in numerous instances, including, but not limited to, the examples set forth above, Counter-Defendants have represented in commercial advertisements meant to influence purchasing decisions, expressly or by implication, that their products are all, or virtually all, made in the United States and that all, or virtually all, of the steel comprising Counter-Defendants' products are of U.S. origin.

23.     Counter-Defendants' claims that their products are "American made" or "Made in the USA" are unqualified U.S. origin claims that are advertised and promoted to the public and enter interstate commerce. These claims are material in that they are likely to influence consumer's purchasing decision, and, on information and belief, Counter-Defendants intend these claims to influence purchasing decisions.

24.     Contrary to their representations, on information and belief, Counter-Defendants' products are made using a significant amount of steel imported from outside the United States.

25.     On information and belief, records from an international trade database show that within the last ten years: (1) Boltex has imported more than 42,000 tons, mostly flanges and raw materials;[2] and (2) Weldbend has imported over 18,000 tons, mostly flanges and raw materials. It is also possible that Counter-Defendants' indirectly imported additional flanges and raw materials through entities that are not identified as Boltex or Weldbend.

26.     Even if Counter-Defendants' products are assembled or finished in the USA, it is false and misleading for Counter-Defendants to label or advertise their final products with an unqualified "Made in USA" or similar claim, because the products are labeled "Made in USA" when in fact imported material constitutes the whole, the essence, a significant portion, or even a non-negligible portion of the finished product. In each of these instances, the "Made in USA" or similar claim would actually mislead or deceive consumers who are concerned with or interested in the origin of products.

27.     The Federal Trade Commission ("FTC") guidance on "Made in the USA" claims is instructive, and Counter-Defendants' statements do not comply with that guidance.[3]

---

[2] By way of reference, Ulma Forja manufactures 3,000 tons each month.
[3] The FTC standard is set forth in the Federal Trade Commission, Enforcement Policy Statement on United States Origin Claims ("Enforcement Policy") 62 Fed.Reg. 63756 (December 2, 1997), available at

28. On information and belief, Counter-Defendants' products are *not* "all or virtually all" made in the United States.

29. On information and belief, it is *not* the case that "all significant parts and processing that go into" Counter-Defendants' products are of U.S. origin.

30. On information and belief, Counter-Defendants' products do *not* "contain no – or negligible – foreign content."

31. On information and belief, Counter-Defendants did not have, at the time the "Made in the USA" and "American Made" representations were (and are still being) made, a "reasonable basis" to claim that their products are, in fact, all or virtually made in the United States and with material of U.S. origin.

32. Counter-Defendants do *not* adequately qualify their claims to avoid consumer deception. On information and belief, Counter-Defendants do *not*:

    a. Limit their claims to specify that their products are only "Normalized in the USA," or "Finished in the USA" (for example);

    b. Disclose the existence of foreign-supplied material in their products;

    c. Limit their claims to specify that their products are "Made in USA with imported steel" (for example); or

    d. Make representations consistent with acceptable qualified U.S. origin claims.

---

https://www.ftc.gov/system/files/documents/plain-language/bus03-complying-made-usa-standard.pdf. The Commission states in part:

> Based on its review of the traditional use of the term *Made in USA*, and the record as a whole, the Commission concludes that consumers are likely to understand an unqualified U.S. origin claim to mean that the advertised product is "all or virtually all" made in the United States. Therefore, when a marketer makes an unqualified claim that a product is *Made in USA*, it should, at the time the representation is made, possess and rely upon a reasonable basis that the product is in fact all or virtually all made in the United States. A product that is all or virtually all made in the United States will ordinarily be one in which all significant parts and processing that go into the product are of U.S. origin. In other words, where a product is labeled or otherwise advertised with an unqualified *Made in USA* claim, it should contain only a *de minimis*, or negligible, amount of foreign content.

33. Unqualified statements such as "American made" and "Made in the USA" suggest to consumers that the advertised products are "all or virtually all" made in the United States with materials of U.S. origin.

34. Therefore, Counter-Defendants' claims that their products are "American Made" or "Made in the USA," and similar statements and related imagery, are false and misleading, either literally or because they are likely to convey a false impression and have deceived, or have the tendency to deceive, a substantial segment of the consumers purchasing carbon steel flanges.

35. Evidence of actual consumer confusion can be found in various social media posts regarding Counter-Defendants. In addition to the examples set forth above regarding Weldbend, below is a Facebook post from a group identified as "Bring Back American Jobs and Buy Products Made in The USA" regarding Boltex:



**Bring Back American Jobs And Buy Products Made In The USA**

👍 Like Page    ···

August 19, 2018 · 🌐

The U.S. International Trade Commission ruled Friday that Houston-based Boltex Manufacturing Co. was suffering from unfair competition from factories in India, Italy and Spain in the finished carbon-steel flange business.

http://www.houstonchronicle.com/.../Houston-manufacturer-figh...

**Houston manufacturer stands up for fair trade**

The U.S. International Trade Commission ruled Friday that Houston-based Boltex Manufacturing Co. was suffering from unfair competition from factories in India, Italy and Spain in the finished carbon-steel flange business. Boltex, a family-owned...

HOUSTONCHRONICLE.COM

167 Reactions   3 Comments   105 Shares

👍 Like        💬 Comment        ↪ Share

👍❤️😮 167                          Chronological ▾

105 Shares

(from Facebook, last accessed on August 31, 2018).

36.      Counter-Defendants' claims that all of their products are "Made in the USA" and/or "American Made" are false and misleading, either literally or because the claims are at best ambiguous and likely to convey a false impression. By using and continuing to use the false "Made in USA" and "American Made" designations, Counter-Defendants are falsely advertising and competing unfairly with Counter-Plaintiffs.  Counter-Plaintiffs are damaged thereby or likely to be damaged by the false and misleading statements, including through loss of sales as described above.

37.      Counter-Defendants have a long history of deceiving customers regarding the source of origin of their flange.  Upon information and belief, in 1961, James J. Coulas, Sr., the

25

founder of Weldbend's predecessor, was indicted by a federal grand jury and charged with seven counts of knowingly removing and obliterating the foreign country of origin from fittings and flanges that he had imported from England. Upon information and belief, during that proceeding, Coulas Sr. admitted that he intentionally removed the English country of origin markings from imported fittings and flanges, and die-stamped U.S. trade names onto them.

38.     In 1990, Weldbend was sued by Tube Forgings of America Inc. in the District of Oregon. The lawsuit alleged, *inter alia*, that Weldbend violated the Lanham Act by falsely holding itself out as a domestic manufacturer of fittings when the fittings had, in fact, been imported. Upon information and belief, Weldbend did not contest the plaintiff's assertions that it ground off country of origin markings and admitted that it had done so to at least seven million foreign manufactured fittings and flanges. The court ultimately enjoined Weldbend from removing country-of-origin markings from fittings formed and beveled in foreign countries and from selling from its inventory any fitting that was formed and beveled overseas and has had its country-of-origin marking removed.

39.     In 2003, a manufacturer of flanges alleged in litigation (*Weldbend Corp. v. Silbo Industries Inc.*, Case No. 02-cv-08768 (N.D. Ill.)) that Weldbend was engaged in the unlawful marketing and sale in the U.S. of imported goods that were mismarked or unmarked as to country of origin. Specifically, that Weldbend imported foreign-manufactured fittings and flanges that it then passed off to U.S. customers as either "Made in USA" or of "domestic" manufacture by Weldbend.

40.     Counter-Defendants offer competitive products through the same channels of trade and directed to the same customers and/or prospective customers as Counter-Plaintiffs. On information and belief, statements such as "Made in the USA" or "American Made" are material

as they are likely to influence customers' purchasing decisions. Because of a belief that Counter-Defendants' products are both made from American steel and manufactured in the U.S., some customers are likely to choose to purchase Counter-Defendants' products instead of Counter-Plaintiffs' products.

41.     Counter-Defendants use and continued use of the false "Made in USA" and "American Made" designations is willful and intentional.

42.     Weldbend takes its misrepresentations a step further. Weldbend advertises its goods as "Made in USA" with "unquestionable traceability." By advertising or promoting its goods as if Weldbend handles each step of the manufacturing process, Weldbend is misrepresenting the nature, characteristics, qualities, and geographic origin of its goods.

43.     Like Weldbend, Boltex has made a number of misrepresentations to consumers regarding the technical aspect of carbon steel flanges. For example, on information and belief, on its post-sale MTRs, Boltex provides the wrong edition year for the ASME SA105 standards that apply to its A105 carbon steel flanges. On information and belief, on its website, Boltex provided a "Reference Manual" to consumers, which Boltex represents contains the proper technical standards for carbon steel A105 flanges. However, a closer look at the Reference Manual reveals the following misrepresentations:

a.     On pages 2–3, Boltex mistakenly refers to the carbon equivalency formula as "Barlow's formula"; however Barlow's formula is actually for hoop strength of a pipe, not carbon equivalency; and

b.     On page 3, Boltex provides a chemistry chart representing that the maximum Vanadium (V) permitted in A105 carbon steel is 0.03, but it is actually 0.08. Its chart also misrepresents that the maximum Phosphorus (P) permitted in A105

carbon steel is 0.04, but it is actually 0.035. A similar misrepresentation is made about the permitted maximum amount of Sulfur (S). Boltex states the maximum compositional limit is 0.05, when ASTM A105 requires a maximum of 0.04.

44. Accordingly, Boltex has gained an unfair competitive advantage in the marketplace by mispresenting itself on its website and in other media as a technical expert in the field of A105 carbon steel flanges and misrepresenting to consumers what the technical standards are for A105 flanges. Customers rely on these types of representations in making purchasing decisions. These misrepresentations harm Counter-Plaintiffs and other carbon steel flange manufacturers in the industry by deceiving customers regarding incorrect technical standards and unfairly diverting sales to Boltex.

## COUNT I

### False Designation of Origin Under the Lanham Act (15 U.S.C. § 1125(a)(1))

45. Counter-Plaintiffs re-allege and incorporate by reference the allegations in the preceding paragraphs as if set forth herein.

46. Counter-Defendants deliberately market, promote, and advertise their ASTM A105 carbon steel flanges and certain high yield carbon steel flanges (ASTM A350 LF2, A694 F52, A694 F60, A694 F65, and A694 F70) as "Made in the USA" and/or "American Made" (and variations of same, including imagery, as alleged herein) commercially and in interstate commerce.

47. Counter-Defendants' use, commercially and in interstate commerce, of "Made in the USA" or "Made in America" (and variations of same, including imagery, as alleged herein) are false and misleading statements, descriptions and representations of fact and constitute false designation of origin of Counter-Defendants' products.

48. On information and belief, Counter-Defendants do not have a "reasonable basis" to claim that all of their products are, in fact, made in the United States. On information and belief,

many of Counter-Defendants' products contain significant (or at least non-negligible) amounts of foreign material and processing and are not all or virtually all made in the United States.

49. Counter-Defendants' claims, statements, and representations about their products are false and misleading, either literally or because they are at best ambiguous and likely to convey a false impression.

50. Counter-Defendants' conduct as alleged herein is willful and is intended to cause has caused, or is likely to cause, confusion, mistake or deception as to the origin of their goods and has actually confused or deceived or has the tendency to confuse or deceive a substantial segment of customers. That goods are of U.S. origin is material in that it is likely to influence the customers' purchasing decisions.

51. Counter-Defendants' conduct as alleged herein constitutes false designation of origin in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1).

52. Counter-Defendants' conduct as alleged herein has proximately caused injury and is likely to continue to proximately cause injury to Counter-Plaintiffs, such that Counter-Plaintiffs are entitled to damages for Lanham Act violations, an accounting of profits made by Counter-Defendants on sales of the flanges, and recovery of Counter-Plaintiffs' costs for this action.

53. Counter-Defendants' acts are willful, wanton and calculated to deceive, and are undertaken in bad faith, making this an exceptional case entitling Counter-Plaintiffs to recover additional damages and reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

54. Counter-Defendants' conduct as alleged herein is continuing and is causing immediate and irreparable harm and injury to Counter-Plaintiffs that will continue to both damage Counter-Plaintiffs and confuse or deceive the public, unless enjoined by this Court. Counter-Plaintiffs have no adequate remedy at law.

55. Counter-Plaintiffs are entitled to, among other relief, injunctive relief and an award of actual damages, Counter-Defendants' profits, enhanced damages and profits, reasonable attorneys' fees and costs of the action under Sections 34 and 35 of the Lanham Act, 15 U.S.C. §§ 1116, 1117, together with prejudgment and post-judgment interest.

## COUNT II

### False Advertising Under the Lanham Act (15 U.S.C. § 1125 (a)(1))

56. Counter-Plaintiffs re-allege and incorporate by reference the allegations in the preceding paragraphs as if set forth herein.

57. Counter-Defendants deliberately market, promote, and advertise their ASTM A105 carbon steel flanges and certain high yield carbon steel flanges (ASTM A350 LF2, A694 F52, A694 F60, A694 F65, and A694 F70) as "Made in USA" and or "American Made" (and variations of same, including imagery, as alleged herein) commercially and in interstate commerce. By advertising and promoting their goods as such, Counter-Defendants are making false and misleading statements, descriptions, and representations of fact as to the nature, characteristics, qualities, and geographic origin of their goods.

58. Additionally, Weldbend commercially and in interstate commerce advertises and promotes its ASTM A105 carbon steel flanges as made with "unquestionable traceability." By advertising and promoting its goods as such, Weldbend is making further false and misleading statements, descriptions, and representations of fact as to the nature, characteristics, qualities, and geographic origin of its goods.

59. On information and belief, Counter-Defendants do not have a "reasonable basis" to claim that their products are, in fact, made in the United States. On information and belief, many

of Counter-Defendants' products contain significant (or at least non-negligible) amounts of foreign material and processing and are not all or virtually all made in the United States.

60.　Counter-Defendants' claims, statements, and representations about their products are false and misleading, either literally or because they are at best ambiguous and likely to convey a false impression.

61.　Counter-Defendants' conduct as alleged herein is willful and is intended to cause and has caused, or is likely to cause, confusion, mistake or deception as to the nature, characteristics, qualities, and geographic origin of their goods and has actually confused or deceived or has the tendency to confuse or deceive a substantial segment of customers. These statements, including those relating to the U.S. origin of the goods and the traceability of Weldbend's goods are each material in that each is likely to influence the customer's purchasing decisions.

62.　Counter-Defendants' conduct as alleged herein constitutes false advertising in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1).

63.　Counter-Defendants' conduct as alleged herein has proximately caused injury and is likely to continue to proximately cause injury to Counter-Plaintiffs, such that Counter-Plaintiffs are entitled to damages for Lanham Act violations, an accounting of profits made by Counter-Defendants on sales of the flanges, and recovery of Counter-Plaintiffs' costs for this action.

64.　Counter-Defendants' acts are willful, wanton and calculated to deceive, and are undertaken in bad faith, making this an exceptional case entitling Counter-Plaintiffs to recover additional damages and reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

65.　Counter-Defendants' conduct as alleged herein is continuing and causing immediate and irreparable harm and injury to Counter-Plaintiffs, that will continue to both damage

Counter-Plaintiffs and deceive the public unless enjoined by this Court. Counter-Plaintiffs have no adequate remedy at law.

66. Counter-Plaintiffs are entitled to, among other relief, injunctive relief and an award of actual damages, Counter-Defendants' profits, enhanced damages and profits, reasonable attorneys' fees and costs of the action under Sections 34 and 35 of the Lanham Act, 15 U.S.C. §§ 1116, 1117, together with prejudgment and post-judgment interest.

## COUNT III

## Common Law Unfair Competition

67. Counter-Plaintiffs re-allege and incorporate by reference the allegations in the preceding paragraphs as if set forth herein.

68. Counter-Defendants have made false and misleading (express and implied) claims, statements, and representations of fact to distributors, customers, and others about their ASTM A105 carbon steel flanges and certain high yield carbon steel flanges (ASTM A350 LF2, A694 F52, A694 F60, A694 F65, and A694 F70) that have given Counter-Defendants an unfair competitive advantage over Counter-Plaintiffs.

69. Counter-Defendants have made false and misleading (express and implied) claims, statements, and representations of fact to distributors, customers, and others that their ASTM A105 carbon steel flanges and certain high yield carbon steel flanges (ASTM A350 LF2, A694 F52, A694 F60, A694 F65, and A694 F70) are "Made in the USA" and/or "American Made" (and variations of same, including imagery, as alleged herein). Weldbend has made additional false and misleading (express and implied) claims, statements, and representations of fact regarding the "traceability" of its flanges. In making these misrepresentations, Counter-Defendants have purposefully and intentionally deceived, misled, and confused distributors, customers, end-users and others. Counter-Defendants' false and misleading description of the U.S. origin of their goods

are actually causing or are likely to cause confusion, mistake or deception about the nature, characteristics, qualities, and geographic origin of their goods. Counter-Defendants know, or in the exercise of reasonable discretion should know, that their false and misleading advertising encourages the sale and use of their carbon steel flanges in place of Counter-Plaintiffs' carbon steel flanges and encourages a false higher valuation by customers of their carbon steel flanges.

70. Similarly, Boltex has gained an unfair competitive advantage in the marketplace by mispresenting itself as having expertise in the field of carbon steel flanges and misrepresenting to consumers what the technical standards are for ASTM A105 carbon steel flanges. Boltex's misrepresentations, on information and belief, include: (1) defining "Barlow's formula" in its Reference Manual but actually showing the formula for calculating equivalent carbon content; and (2) providing a chemistry chart that says the maximum Vanadium (V) permitted in A105 carbon steel is 0.03, when in fact it is 0.08. Accordingly, in the course of its business, Boltex is supplying false information for the guidance of others at a minimum without exercising reasonable care or competence in communicating the information, and consumers are justifiably relying on those misrepresentations to their detriment and to the detriment of other carbon steel manufacturers in the industry, including Counter-Plaintiffs. In essence, Boltex's misstatements of the technical standards for A105 carbon steel flanges constitute misrepresentations to the consuming public such that customers in the carbon steel industry are misled to: (1) believe that Boltex has technical expertise in the industry; and (2) the technical standards set forth by Boltex are the standards which others in the industry should follow.

71. Counter-Defendants' actions are willful and intentional and have been undertaken with the purpose to confuse and deceive distributors, customers, end-users, and others to provide a competitive advantage to Counter-Defendants.

72.     Counter-Defendants' conduct as alleged herein is continuing and causing immediate and irreparable harm and injury to Counter-Plaintiffs, that will continue to both damage Counter-Plaintiffs and confuse and deceive the public unless enjoined by this Court. Counter-Plaintiffs have no adequate remedy at law.

73.     Counter-Plaintiffs are entitled to damages for Counter-Defendants' unfair competition, an accounting of profits made on Counter-Defendants' flanges which were sold through unfair claims, statements, or representations, and recovery of Counter-Plaintiffs' costs in this action.

74.     Counter-Defendants knew or should have known that their conduct were reasonably likely to result in injury, damages, or other harm, thus warranting an award of punitive damages against them.

## APPLICATION FOR PERMANENT INJUNCTION

75.     Counter-Plaintiffs re-allege and incorporate by reference the allegations in the preceding paragraphs as if set forth herein.

76.     Pursuant to 15 U.S.C. §1116, Counter-Plaintiffs are entitled to permanent injunctive relief to prevent Counter-Defendants' continuing violations of 15 U.S.C. §1125(a)(1). Unless enjoined by this Court, Counter-Defendants will irreparably injure Counter-Plaintiffs' goodwill and erode their market share.

77.     Upon information and belief, Counter-Defendants will continue their violations of the Lanham Act unless these violations are restrained and enjoined by this Court. Due to Counter-Defendants' continuing acts of false advertising, Counter-Plaintiffs have suffered and/or will suffer irreparable injury for which they have no adequate remedy at law.

## ATTORNEYS' FEES

78.     Because this is an exceptional case, Counter-Plaintiffs are entitled to recover their attorneys' fees under Section 35 of the Lanham Act (15 U.S.C. § 1117).

## VII.    PRAYER

WHEREFORE, PREMISES CONSIDERED, Defendants and Counter-Plaintiffs Ulma Forja, S. Coop. a/k/a Ulma Piping and Ulma Piping USA Corp. respectfully pray that Plaintiffs and Counter-Defendants Boltex Manufacturing Company, L.P. and Weldbend Corporation take nothing by their claims and causes of action as contained in the Original Complaint, and that all such claims and causes of action be dismissed with prejudice. Defendant and Counter-Plaintiffs further seek judgment and relief against Counter-Defendants, including:

a.      Entry of an injunction permanently restraining and enjoining Counter-Defendants, agents, servants, employees, independent contractors, attorneys, representatives, and those persons in active concert or participation with them who receive actual notice of the order from the proscribed activities set forth above;

b.      Award Counter-Plaintiffs damages as a result of Counter-Defendants' unlawful acts, including Counter-Plaintiffs' lost profits;

c.      Award Counter-Plaintiffs the additional profits gained by Counter-Defendants due to their violation of the Lanham Act;

d.      Award Counter-Plaintiffs treble damages and exemplary damages as allowed by applicable statutes;

e.      Award Counter-Plaintiffs both the costs of this action and the reasonable attorneys' fees incurred by them in prosecuting this action;

f.      Award Counter-Plaintiffs statutory damages if so elected;

g.      Award Counter-Plaintiffs pre-judgment and post-judgment interest as allowed by law; and

h.      Award such other relief, both general and specific, legal and equitable, as the Court may deem appropriate and just under the circumstances.

Respectfully submitted,

DECHERT LLP

*/s/ Andrew J. Levander*
Andrew J. Levander
Mauricio A. España
3 Bryant Park
1095 Avenue of the Americas
New York, New York 10036
(212) 698-3848
mauricio.España@dechert.com

*Counsel for Defendants/Counter-Plaintiffs*

**OF COUNSEL:**

David Gerger
dgerger@gkhfirm.com
TX Bar No. 07816360
GERGER, KHALIL & HENNESSY
1001 Fannin, Suite 2450
Houston, Texas 77002
Phone: 713-224-4400
Fax: 713-224-5153

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument was served upon the following counsel *via electronic notification, hand delivery, facsimile, and/or certified mail return receipt requested* on August 31, 2018.

Saul Perloff
saul.perloff@nortonrosefulbright.com
Katharyn Grant
katharyn.grant@nortonrosefulbright.com
**NORTON ROSE FULBRIGHT US LLP**
300 Convent Street, Suite 2100
San Antonio, Texas 78205
T +1 210 224 5575
F +1 210 270 7205

**ATTORNEYS FOR PLAINTIFFS**
**BOLTEX MANUFACTURING COMPANY,**
**L.P. and WELDBEND CORPORATION**

*/s/ Mauricio A. España*
Mauricio A. España