IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| BOLTEX MANUFACTURING COMPANY, L.P., *et al.*, <br><br>　　　Plaintiffs, <br>VS. <br><br>ULMA PIPING USA CORP., *et al.*, <br><br>　　　Defendants. | § § § § § § § § § § §   CIVIL ACTION NO. 4:17-CV-1400 |

## **ORDER**

Before the Court is Ulma Forja, S. Coop, also known as Ulma Piping, and Ulma Piping USA Corp.'s (hereinafter collectively referred to as "Ulma" or "Defendants") Motion to Exclude the testimony of Thomas W. Britven ("Britven") (Doc. No. 95). Boltex Manufacturing Company L.P. and Weldbend Corporation (hereinafter collectively referred to as "Plaintiffs") have filed a response (Doc. Nos. 115 [redacted], 116 [sealed]) to which Defendants have replied (Doc. No. 130).

### I.

Britven, a certified public accountant ("CPA"), is Plaintiffs' damages expert. Defendants allege that his testimony should be excluded on the basis of his qualifications (or lack thereof) and also that his opinion is not well-grounded. *Daubert v. Merrill Dow Pharms., Inc.*, 509 U.S. 579 (1993); *Kumho Tire Co., Ltd v. Carmichael*, 526 U.S. 137 (1999); FED. R. EVID. 702.

### II.

Defendants' attack on Britven's qualifications and opinions is twofold. First, they argue that in his report he offers legal opinions and conclusions and that, as a CPA, his training does not

qualify him to offer such testimony.[1]

This Court turns first to the fact that in its motion, many of Ulma's complaints are directed specifically at the content of Britven's report. The purpose of an expert's report is to inform and educate the opposing parties about that witness's opinions and the underlying basis for that opinion. The fact that a report contains facts, opinions, conclusions, and/or hearsay that are otherwise inadmissible is not a primary concern to this Court. Absent the agreement of the parties, this Court will not admit the report of any expert into evidence. Reports are, by definition, hearsay. More often than not, reports are filled with other inadmissible facts, opinions, or references. That being the case, the Court is not concerned about extraneous statements included in the report of Britven or any other expert.

Nevertheless, the Court must be concerned about areas of purported testimony which are clearly inadmissible or outside the scope of an individual's competency. Some of Ulma's complaints about Britven clearly fall into this category. In his report, Britven discusses various legal cases which, in turn, discuss various damage theories and he offers opinions about the appropriate measure of damages in an unfair competition case. These are not proper topics for the jury to consider. Neither Britven nor any other individual (absent extraordinary and currently unforeseen circumstances) will be allowed to offer testimony about the law. This Court, with the appropriate input from the parties, will decide what law controls this case, and it will, at the appropriate time, so instruct the jury. To the extent that Ulma's motion articulates these concerns and seeks to prevent Britven from testifying about applicable law and other legal issues, its motion is granted.

Defendants voice another more relevant and more substantive concern about Britven's

---

[1] Ulma also questions the accuracy of Britven's legal discussions and conclusions. Given this Court's rulings in this order, it need not explore this issue.

2

report and anticipated testimony. They contend that many of the opinions Britven purports to offer contain certain conclusions that stray far away from his training and experience as a CPA. They claim that Britven's training is insufficient to enable him to define the complex market for flanges, much less determine whether the market is segmented, or decree which products compete. Ulma claims that one must be an economist to make that kind of analysis. While this Court questions whether merely being an economist qualifies one to testify about the market for steel flanges, it need only decide whether Britven is competent to do so.

Initially, this Court finds that as a CPA, Britven has the requisite experience to analyze the relevant market numbers. He is clearly competent to testify concerning costs, sales, profit figures, and market share figures. His training as CPA qualifies him to analyze these numbers and make and explain the appropriate comparisons and calculations. While this area falls within the overall scope of Ulma's objection, the main thrust of their complaint is aimed at the underlying assumptions that buttress and set the parameters of his evaluation calculations. For example, Ulma complains that Britven is not capable of defining (and has in fact mis-defined) the market for flanges. Further, they argue he has overlooked the fact that the market is segmented and wrongly reaches the conclusion that the Plaintiffs' and Defendants' products compete with each other.

The Court sustains these objections to the extent that Britven purports to testify about market share and/or market segmentation (outside of his analysis of financial data and sales figures). This is clearly outside his area of expertise and experience. Nevertheless, if this evidence is derived from other individuals who are competent and experienced in this area, or from separate but otherwise reliable sources, his ultimate conclusions regarding damages and damage calculations would be admissible because (1) as an expert, he is entitled to relay upon these and (2) as a CPA, he has the necessary ability, training, and experience to analyze the data and make the calculations that undergird his ultimate conclusions as to damages.

# III.

The next objection to Britven's testimony is based upon his use of the precepts laid out in *Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*, 575 F.2d 1152 (6th Cir. 1978) and *State Indus., Inc. v. Mor-Flo Indus., Inc.*, 883 F.2d 1573 (Fed. Cir. 1989). Both of these cases were patent cases in which the party claiming infringement prevailed. The *Panduit* opinion sets out four factors that a prevailing party must meet to recover lost profits:

1. Demand for the product;
2. Non-availability of acceptable alternatives;
3. Manufacturing and marketing capabilities; and
4. Amount of lost profits.

575 F.2d at 1156.

The *Mor-Flo* case involves a multiparty market analysis. Consequently, the court in *Mor-Flo* adjusted the second *Panduit* factor, explaining that a proportional market share analysis could be used.

Ulma first argues that this approach is limited to cases involving patents. Plaintiffs oppose this purported limitation and point to the fact that Defendants' expert, Thomas Varner, used the same basic approach. Moreover, Plaintiffs point to various other cases involving non-patent unfair competition claims in which a similar market share analysis was used. Plaintiffs also contest the Defendants' claim that this case should be governed by the rule expressed in *BIC Leisure Prods., Inc. v. Windsurfing Int'l, Inc.*, 1 F.3d 1214, 1218 (Fed. Cir. 1993), wherein the court found that a market share approach was inapplicable because the products in question (sail boards) did not actually compete due to their respective price points. The Plaintiffs cite case law supporting their position.

4

This Court holds that a market share approach, such as that suggested by Britven, is not inappropriate as a matter of law. Clearly, the approach favored by the Plaintiffs paints a picture that Plaintiffs and Defendants are direct competitors, and as such, any loss of business by Ulma results in a gain for the Plaintiffs. Ulma posits the opposite scenario by claiming that the companies either do not compete or rarely compete because of product, price, or customer preference, and because they compete so infrequently, the use of a market share approach is totally inappropriate.

Consequently, this issue cannot be resolved short of a full airing of the facts. Ulma may be correct, and this Court may ultimately find that Britven's approach is unsupported by the facts in the context of this case. Nevertheless, the Court cannot make this determination based upon the record it has now.

Similarly, Defendants attack Britven's opinions because they are based upon the assumption that the flange market is not segmented and that there is overlap between the sales of Defendants' flanges and the sales of Plaintiffs' flanges. Stated another way, Defendants claim Britven assumes much more direct competition between their flanges and those of the Plaintiffs than truly exists. There is no doubt that these somewhat overlapping assumptions are key building blocks in Britven's damage model. Defendants provide the Court with the following examples:

> Rather than looking at the sales volume for each customer, Britven simply calculated the percentage of overlapping customers. For instance, The Global Group f/d/a Forgings, Flanges & Fittings ("FFF") was Ulma's largest U.S. customer during the relevant time period, making up 50.1% of its total flange sales. Boltex's sales to FFF were a fraction of a percent of their overall sales (0.001%), while Weldbend's sales records do not indicate any sales to FFF. Given that FFF buys so few flanges from Plaintiffs, there is zero support in the record to suggest that FFF would turn to either Plaintiff if it could not purchase from Ulma.

\*\*\*

> Britven also fails to consider that Plaintiffs do not currently normalize flanges at the 150 and 300 pressure classes, which is significant given that sales of 105 and 300 pressure class flanges account for approximately 64% of Ulma's revenue

5

during the relevant period. Bernobich testified that Boltex keeps very few normalized A105 150 and 300 class flanges in stock and that normalizing large these flanges is cost prohibitive. Given that Plaintiffs believe the normalizing these flanges is too expensive, there is no basis in the record to conclude that Plaintiffs would all of a sudden begin to normalize in the but-for scenario. Plaintiffs therefore would not pick up any additional sales from Ulma's absence in the flange market.

Defendants offer these examples, among others, in an attempt to undermine Britven's conclusion. Defendants argue that, contrary to Britven's conclusion, less sales by Defendants does not automatically translate into increased sales by Plaintiffs. Plaintiffs reply that although Britven is not required to verify the truth of Plaintiffs' allegations or theories, Britven's conclusions are sound. According to Plaintiffs, Britven conducted numerous interviews, reviewed over 100 documents, and went over the discovery responses made by the parties. They also argue that questions concerning the factual predicate should be the subject of cross-examination, not elimination under *Daubert*.

### IV.

Both parties have valid points to make regarding Britven's proposed testimony. While an expert under Rule 703 may obviously rely on hearsay, he or she cannot be made a vehicle for getting otherwise inadmissible testimony before the jury. Therefore, the contents of Britven's employee interviews, as an example, will not be admissible through him merely because he relied upon them. This Court cannot pre-determine what may or may not be admissible, but it is clear that outside of the reasonable conclusions one can derive from financial data, Britven is not competent to testify:

1. to the ins and outs of the flange business including who competes with whom and in what markets or with what products, what markets are or are not segmented;

2. that absent certain players in the market, that Plaintiffs or Defendants will shift their manufacturing or sales focus;

6

3. that flange customers would or would not adopt certain buying patterns or procedures if the market forces changes; or,

4. to future sales to be expected in the flange business.

Britven can rely upon the evidence offered by other individuals or on the accounting/financial records, if any, with regard to the above-mentioned list or categories in formulating his opinions. He can also testify as to lost profits based upon historic sales figures and evidence about the market provided by Boltex and others.

V.

In conclusion, this Court grants in part and denies in part the Motion to Exclude the Report and Testimony of Thomas W. Britven (Doc. No. 95). To summarize its holdings, the Court:

A. Excludes Britven's report as it will all expert reports absent agreement of counsel;

B. Excludes any purported testimony by Britven as to the controlling law, or how damages may legally be calculated because he is not trained to opine on the law and such an opinion would be outside his expertise;

C. Excludes any purported testimony as to the flange market, how it works, whether it is segmented or not, and whether the Plaintiffs and Defendants compete in the market place as he is a CPA and has not professed to be an expert in the design, manufacture or sales of flanges.[2]

D. Excludes testimony from Britven as to what producers of flanges or buyers of flanges would or would not do if a shift in market forces occurred as he exhibited neither the training nor expertise which would help the jury;

E. Excludes testimony by Britven as to future sales, trends in sales, or shifts in sales, unless based on financial data, as Britven has no expertise in the world of flanges.

In summary, the Court does not exclude Britven as a witness. Moreover, with the limitations outlined above, he may testify as to lost profits and in doing so may rely on any source

---

[2] That having been said, he is capable of reviewing financial records and opining as to financial details which may encroach on some of these areas.

of information contemplated by Rule 703 which has been disclosed properly under the Rules.

SIGNED at Houston, Texas, this 28th day of June, 2019.

ANDREW S. HANEN
UNITED STATES DISTRICT JUDGE