IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| BOLTEX MANUFACTURING COMPANY, L.P., *et al.*, | § § § | |
| Plaintiffs, | § § | |
| VS. | § § | CIVIL ACTION NO. 4:17-CV-1400 |
| ULMA PIPING USA CORP., *et al.*, | § § § | |
| Defendants. | § | |

## MEMORANDUM & ORDER

Plaintiffs Boltex Manufacturing Company, LP and Weldbend Corporation (hereinafter referred to respectively as "Boltex" and "Weldbend" or collectively as "Plaintiffs") have filed a Motion for Summary Judgment (Doc. Nos. 97 [redacted version]; 98 [sealed version]; 106 [corrected redacted version]). Defendants Ulma Forja S. Coop. and Ulma Piping USA Corp. (hereinafter referred to as "Ulma" or "Defendants") have filed a Response (Doc. No. 110). Plaintiffs subsequently filed a Reply in support (Doc. Nos. 128 [redacted version]; 129 [sealed version]).[1]

### I. Factual Background

This dispute arises between carbon steel flange manufacturers. A flange is a "disc collar or ring that attaches to a pipe, providing a method of connecting pipes, valves, pumps and other equipment to form a piping system." (Doc. No. 1 at 4). Flanges are formed from steel forgings. Rough forgings must be heat treated, machined, and finished in order to become a flange. Weldbend buys forgings from domestic and foreign suppliers and manufactures the forgings into

---

[1] Although the parties (correctly) refer to themselves as "Counter-Plaintiffs" and "Counter-Defendants" throughout their motions and responses, the Court will refer to the parties as described above.

1

flanges in its Illinois facility. (Doc. No. 98 at 3). Boltex makes most of its own forgings domestically and performs its heat treating in one of its two plants located in Houston. (*Id.* at 4). In its second Houston plant, Boltex machines, finishes, and warehouses its flanges. (*Id.*). Defendants produce their flanges in Spain.

Plaintiffs and Defendants sell their flanges to distributors who in turn sell the flanges to customers. Some of these distributors include: DNOW, L.P., Industrial Valco, and Wolseley Industrial Group/Ferguson.[2] Defendants allege that Plaintiffs falsely advertise their product and falsely designate their products' origin in violation of § 43(a) of the Lanham Act, codified at 15 U.S.C. § 1125(a).[3] Specifically, Defendants contend that Boltex and Weldbend falsely stamp or otherwise advertise that their flanges are "Made in the USA" or "American Made" when at least some of the steel in the flanges is internationally sourced. (Doc. Nos. 68 at 16; 98 at 4, 9). Similarly, Defendants allege that Weldbend's packaging contains pictures of Uncle Sam and the American flag and that its social media accounts display representations such as, "This product [sic] Made in the USA with USA Steel." (*Id.* at 18). Defendants also allege that Weldbend falsely advertises that its goods are made with "unquestionable traceablility." (Doc. No. 68 at 30). After Plaintiffs

---

[2] *See* Alex Man Deposition as Representative of DNOW, L.L.P. (Doc. No. 122, Ex. No. 12 at 9); Robert Raban Deposition as Representative of Industrial Valco (Doc. No. 122, Ex. 14 at 117); Jason Smith Deposition as Representative of Wolseley Industrial Group and Ferguson (Doc. No. 122, Ex. 15 at 44).

[3] Section 1125 (a) provides:
(1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—
    (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
    (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

initiated this suit, alleging that Defendants violated the Lanham Act as well as common laws against unfair competition, Defendants countersued based upon the representations cited above.

## II. Standards of Review

### A. Summary Judgment

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986)). Once a movant submits a properly supported motion, the burden shifts to the non-movant to show that the Court should not grant the motion. *Celotex*, 477 U.S. at 321–25.

The non-movant then must provide specific facts showing that there is a genuine dispute. *Id.* at 324; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court must draw all reasonable inferences in the light most favorable to the nonmoving party in deciding a summary judgment motion. *Id.* at 255. The key question on summary judgment is whether a hypothetical, reasonable factfinder could find in favor of the nonmoving party. *Id.* at 248.

### B. False Advertisement Under the Lanham Act

"The Lanham Act was enacted to protect persons engaged in such commerce against unfair competition." *Seven-Up Co. v. Coca-Cola Co.*, 86 F.3d 1379, 1382–84 (5th Cir. 1996) (internal quotation marks omitted). To state a prima facie case of false advertising, a plaintiff must establish: (1) a false or misleading statement of fact about a product; (2) such a statement either deceived, or

3

had the capacity to deceive, a substantial segment of potential customers; (3) the deception is material, in that it is likely to influence the consumer's purchasing decision; (4) the product is in interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the statement at issue. *Derrick Petrol. Servs. v. PLS, Inc.*, Civil Action No. H–14–1520, 2017 WL 3456920, at *5 (S.D. Tex. Aug. 11, 2017). "The failure to prove the existence of any element of the prima facie case is fatal to the plaintiff's claim." *Pizza Hut, Inc. v. Papa John's Int'l, Inc.*, 227 F.3d 489, 495 (5th Cir. 2000).

"To obtain money damages for false advertising under § 43(a) of the Lanham Act, the plaintiff must first demonstrate that the advertisement was (1) literally false; or (2) likely to mislead and confuse customers." *IQ Prods. Co. v. Pennzoil Prods. Co.*, 305 F.3d 368, 375 (5th Cir. 2002). "For a statement to be literally false, the statement must be 'false on its face.'" *Derrick*, 2017 WL 3456920, at *5. "If the statement at issue is shown to be literally false, the court must assume that it actually misled consumers, without requiring any evidence of such deception from the plaintiff." *IQ Prods.*, 305 F.3d at 375; *see also Pizza Hut*, 227 F.3d at 497 ("[P]laintiff need not introduce evidence on the issue of the impact the statements had on customers."). On the other hand, "if the statement is . . . misleading or ambiguous . . . the plaintiff must demonstrate actual deception." *IQ Prods.*, 305 F.3d at 375. "The statements at issue must be a specific and measurable claim, capable of being proved false or being reasonably interpreted as a statement of objective fact." *Pizza Hut*, 227 F.3d at 496 (internal quotation omitted).

### III. Analysis

Before turning to its analysis, the Court would like to point out Defendants' troubling way of responding to Plaintiffs' Motion for Summary Judgment: Defendants chose to lump both Plaintiffs together for a majority of its arguments, occasionally providing argument and evidence

4

against Weldbend separately, but rarely providing argument or evidence against Boltex. This made it difficult for the Court to discern which evidence applied to which Plaintiff.

That having been said, Defendants make false advertisement claims against both Boltex and Weldbend, arguing that Plaintiffs' representations on or accompanying their products—"Made in the USA" or "American Made"—are literally false. Defendants also claim that both Plaintiffs' use of American iconography confuses consumers into believing that *all* of Plaintiffs' products are made in the U.S. using only U.S. sourced materials. Defendants make additional false advertisement claims against Weldbend, contending that Weldbend's representations that its products are "unquestionably traceable" are literally false or likely misleading. Finally, Defendants make claims against both Plaintiffs, stating that Plaintiffs' representations violate common law rules against unfair competition. Below, the Court discusses each of these in turn.

### A. False Advertisement & False Designation of Origin Claims – Made in the USA & American Made

Plaintiffs urge the Court to grant summary judgment in their favor on Defendants' Lanham Act counterclaims. First, Plaintiffs argue that their representations that their products are "Made in the USA," "American Made," or "domestically manufactured" are literally true, and that Defendants lack evidence to the contrary. (Doc. No. 98 at 2). Second, Plaintiffs dispute whether a genuine issue of material fact remains as to whether the representations are misleading or had the capacity to mislead consumers. (*Id.* at 3). Third, Plaintiffs argue that Defendants have no evidence of materiality. (*Id.* at 18). Last, Plaintiffs allege that Defendants have no evidence that any of the alleged statements at issue caused harm to Defendants. (*Id.*).[4]

---

[4] The parties do not dispute whether the manufacture and distributions of their flanges constitute interstate commerce, the fourth element of the test set out in *Pizza Hut*, 227 F.3d 489, 495 and *Derrick*, 2017 WL 3456920, at *5.

In support of their arguments, Defendants provide the Federal Trade Commission's *Enforcement Policy Statement on U.S. Origin Claims*, which they claim enumerates the standards by which the Court should judge the falsity of Plaintiffs' claims. (Doc. No. 110 at 9). In *Greater Houston Transp. Co. v. Uber Techs., Inc.*, the plaintiff sued the defendant for false advertisement under the Lanham Act for, among other things, advertising its service as "ridesharing." 2015 WL 1034254, at *12 (S.D. Tex. Mar. 10, 2015). Plaintiff proffered the definition of "ridesharing" as defined by the Houston Code of Ordinances. *Id.* The court dismissed this argument stating, "[a] claim based on Plaintiffs' interpretation of [the Houston Code of Ordinances] provision would amount to [an] attempt to enforce a local ordinance." *Id.* (citing *Dial A Car, Inc. v. Transp., Inc.*, 82 F.3d 484 (D.C. Cir. 1996)). Similarly, here, it seems that Defendants are attempting to enforce the Federal Trade Commission standards using a Lanham Act claim.

While this Court appreciates Defendants' attempt to provide it with a standard by which to judge the alleged falsity of Plaintiffs' statements, Defendants do not cite controlling case law indicating that the Fifth Circuit has applied the Federal Trade Commission's standards to Lanham Act cases, and the Court could find none in its own search. In fact, courts actually "caution against blur[ring] the distinctions between the FTC and a Lanham Act [claim]" because a Lanham Act claimant must show that the disputed advertisements "are literally false or misleading to the public, not merely that the advertisements violate FTC guidelines." *Millennium Imp. Co. v. Sidney Frank Imp. Co., Inc.*, No. Civ. 03-5145 JRT/FLN, 2004 WL 1447915, at *6 (D. Minn. June 11, 2004) (first citing *Surdyk's Liquor, Inc. v. MGM Liquor Stores, Inc.*, 83 F. Supp. 2d 1016, 1022 n.2 (D. Minn. 2000); then citing *B. Sanfield, Inc. v. Finlay Fine Jewelry Corp.*, 168 F.3d 967, 972 n.3 (7th Cir. 1999)).

### 1. Literally False

Defendants argue that Plaintiffs' representations that their products were "Made in the USA" or "American Made" are literally false. Defendants argue that Plaintiffs misrepresent their products in two ways: (1) Plaintiffs misrepresent that their flanges are "Made in the USA" when they are in fact made with imported steel and (2) Plaintiffs' overall advertisement scheme implies that all of their flanges are "Made in the USA," when in fact some are made using imported steel. Below, the Court separately analyzes the summary judgment evidence against Boltex and the summary judgment evidence against Weldbend on each of these points.

The Court finds that Defendants have not demonstrated that a genuine issue of material fact remains regarding whether Boltex's statements were literally false. That is, Defendants have not demonstrated a fact issue as to whether Boltex stamps or advertises flanges made with imported steel as "Made in the USA." In fact, Defendants provide no evidence in support of these claims. To the contrary, Boltex provides evidence in the form of deposition testimony from Boltex representative, Franco Geremia, who avers that Boltex "verifies the particular mill number belonging to that particular flange, and based on the source of the steel," will mark the flange "Made in the USA." (Doc. No. 98 at 7); (Geremia Depo. Doc. No. 110, Ex. 21 at 116) (stating that Boltex maintains "100 percent traceability of the product[s]" from start to finish). Thus, while Boltex does not dispute that it manufactures some flanges with internationally sourced steel billets, it provides evidence that it does not mark these flanges "Made in the USA." (Doc. No. 98 at 6).

In a further attempt to prove their counterclaims, Defendants provide interrogatory answers, their expert's report, and lists of materials which Boltex imported during the time period in question. This evidence , such as it is, is insufficient to raise a fact issue. While the evidence demonstrates that Boltex imported steel, it does not demonstrate that this imported steel was used

7

in flanges marked as "Made in the USA." Indeed, Plaintiffs provide evidence that: "[Boltex] only mark[s] 'Made in USA' on flanges that have been produced from domestic steel, forged here, heat treated here and finished here," and that Boltex flanges "will say 'Made in USA' if the raw material was produced or made in the USA—melted in the USA." (F. Bernobich Depo. Doc. No. 103, Ex. 7 at 117); (Geremia Depo. Doc. No. 103, Ex. 11 at 145). Defendants have failed to produce evidence demonstrating a fact issue as to these representations.

Similarly, Defendants have failed to provide evidence of an "overall [Boltex] advertising scheme" in which Boltex represents that all of its flanges are made in the United States.

Defendants have, however, adduced evidence demonstrating a genuine issue of material fact as to the falsity of Weldbend's representations. Weldbend and Defendants both point to an advertisement in which the following statement is made:

> Our American Made line uses *only* top-quality steel from US mills, forged into fittings and flanges at Weldbend's own plant in Argo, Illinois.

(Doc. No. 110, Ex. 7 at 10) (emphasis added). The parties' arguments focus solely on the phrase "American Made," but the inquiry is not necessarily so limited. The Court must also analyze the context in which the representation at issue appears. *See Pizza Hut*, 227 F.3d at 501–02 (holding that "Papa John's has given definition to the word 'better'" by placing the word in the context of ads comparing its own sauce and dough to a competitor's).[5] While the parties argue whether "American Made" is an ambiguous phrase, the Court finds that it is not ambiguous because, like Papa John's, Weldbend has "given definition" to the phrase "American Made" by placing the phrase in the above quoted sentence which specifically seeks to define the term.

---

[5] The Fifth Circuit found that the added context caused the statement "Better Ingredients, Better Pizza" to operate as a statement of fact rather than mere puffery. *See Pizza Hut*, 227 F.3d at 501–02.

Defendants argue that the statement in this advertisement is literally false because, while Weldbend executive James Coulas avers that Weldbend flanges that are described as "American Made" may use steel from a U.S. mill or from an offshore mill, the advertisement clearly states that flanges described as "American Made" use *only* steel from U.S. mills. (J. Coulas Depo. Doc. No. 103, Ex. 8 at 69–70) (Doc. No. 110, Ex. 7 at 10). The Court agrees that Weldbend's conflicting statements raise a genuine issue of material fact. Additionally, while Weldbend clearly represents in this advertisement that these flanges are "forged" at Weldbend's Illinois plant, Coulas admits in his deposition that Weldbend does not forge any of its own fittings or flanges. (J. Coulas Depo. Doc. No. 103, Ex. 8 at 71). Thus, Defendants have demonstrated that a genuine issue of material fact remains concerning the literal falsity of Weldbend's representations that its American Made line uses "only" U.S. sourced steel and that it forges its own flanges.

### 2. Likely to Mislead

The Court will now analyze whether Boltex or Weldbend made representations that were misleading to consumers or that had the capacity to mislead consumers. *See Pizza Hut*, 227 F.3d at 503 (finding that where a claimant fails to provide evidence that the representation is literally false, it must submit evidence that the statement was, at the very least, misleading or had the capacity to mislead consumers). First, although the Court has found that there is no genuine issue of material fact as to the literal falsity of Boltex's representations, it must still determine whether a fact issue remains as to whether its representations are likely to mislead consumers. Additionally, since the evidentiary burden changes based on the literal falsity of the statements at issue, the Court will also perform the likely-to-mislead analysis for Weldbend's alleged misrepresentations in order to address Defendants' alternative claims.[6]

---

[6] If Plaintiffs' representations are literally false, Defendants need not introduce evidence of consumer impact. *See Pizza Hut*, 227 F.3d at 497 ("[W]hen the statements of fact at issue are shown to be literally false, the [claimant] need

Defendants argue that summary judgment is improper because a fact issue remains "as to whether [Plaintiffs'] use of unqualified and express U.S. origin claims, American iconography, and other statements leave a false and misleading impression that all of their products are manufactured in the U.S. with U.S.-sourced steel." (Doc. No. 110 at 13). In support of its claims against both Plaintiffs, Defendants provide testimony from Plaintiffs' customers and screenshots of certain social media posts. In support of its claims against Weldbend, Defendants provide emails between Weldbend and its customers. The Court will look at each of these in turn.

First, Defendants argue that both Plaintiffs' representations are misleading because Plaintiffs' customers have varying interpretations of the phrases "Made in the USA" or "American Made" (among others). (*Id.* at 16). In support, Defendants provide deposition testimony from corporate representatives at DNOW, Ferguson, and Valco, each of whom order Plaintiffs' flanges for resale to its own customers.

**Alex Man, DNOW Representative:**

> Q. So in that case, if it says <u>Made in the USA</u> on the flange or on the Mill Test Report, the steel that is in the flange has to come from the United States?
> A. That's my understanding, yes.
> Q. And the finishing also has to occur in the United States?
> A. Yes.
> Q. And the forging has to occur in the United States?
> A. Yes.
> Q. And if all of those criteria are met, then the flange can be marked Made in the USA?
> A. Yes.
> . . .
> Q. And <u>made in America</u> in that case means from steel made in the --
> A. Yes.
> Q. -- United States?

---

not introduce evidence on the issue of the impact the statements had on consumers . . . In such a circumstance, the court will assume that the statements actually misled consumers."). As such, Defendants argue that "Even if [Plaintiffs'] advertisements were not literally false, which they are, there is a genuine issue of material fact as to whether [Plaintiffs'] statements leave a false and misleading impression." (Doc. No. 110 at 13).

> A. Yes.
> Q. And forgings made in the United States?
> A. Yes.
> Q. And finished in the United States?
> A. Yes

(Doc. No. 110, Ex. 24 at 130, 167) (emphasis added).

### Jason Smith, Ferguson Representative:

> Q. So if steel is not melted in the U.S., then a flange that's made from that steel cannot be characterized as . . . melted and manufactured in the USA, correct?
> A. I would -- I would say no. Melt and manufactured in the USA to me means made in the USA.
> Q. What is your understanding of the term as applied to flanges of "made in America"?
> A. Kind of like what we had talked about here, melt and manufacture. I think the definition I remember seeing is all or substantially all of the processes and parts need to be of U.S. origin.
> . . .
> Q. [is your] understanding similar with respect to the term "American made."
> A. I would take that as the product could be manufactured here but not necessarily all the parts or components were from this country.
> . . .
> Q. So as between those three terms, "made in America," "American made," "manufactured in the USA," you would catalog "American made" and "manufactured in the USA" to mean the same thing and "made in America" to mean something different?
> A. I would, yes.
> Q. Do you know whether Boltex or – or Weldbend manufacture any flanges that you would consider to be imported flanges?
> . . .
> A. Any flanges we would buy from those two companies I would not consider import.

(Doc. No. 110, Ex. 63 at 194–95, 197–99) (emphasis added).

### Robert Raban, Valco Representative:

> Q. And what do you mean by made in the United States?
> A. Well, that they have a machine shop that is producing the material here in the United States.
> Q. Does producing the material include the billets?

> A. Are you asking does it have to be domestic billet in order for it to be a domestic manufacturer?
>
> Q. Yes.
>
> A. That's not my understanding. . . it is my understanding that if material is, wherever the raw material comes from, if it is taken from its raw material form and it is machined into a finished product that that is a domestic material
>
> . . .
>
> Q. And what do you interpret "<u>Made in USA</u>" to mean when it is stamped on a Weldbend flange?
>
> A. Well, I probably have superior knowledge than the layman, but my understanding of made in the USA is that the product is made in the USA with the substantial transformation. So I don't take that to mean that every bit of material has been produced or the raw has been produced in the USA.

(Doc. No. 110, Ex. 64 at 59, 95) (emphasis added).

This testimony alone does not demonstrate that either Plaintiffs' representations are misleading.[7] The case law does not indicate that every consumer must have the same definition of every term; rather, for an advertisement to be considered "misleading," the Court must look for signs that consumers assume something incorrect about the product based on the language or imagery in the advertisement. *See* 5 McCarthy on Trademarks and Unfair Competition § 27:55 (5th ed.) (analyzing how courts evaluate evidence, such as consumer surveys, to determine whether an advertisement has misled consumers).[8] Regardless, the excerpts above demonstrate that the deponents were inconsistently asked to define at least seven different terms: Made in the USA.,

---

[7] Again, the Court need not determine whether all consumers agree on a single, succinct definition. Indeed, this record indicates that each individual's understanding is fundamentally the same (even if the wording differs slightly). For example, Defendants asked the DNOW and Ferguson representatives to define "Made in America." Both representatives agreed that the phrase means all or substantially all of the parts need to be from the United States and all processes (forging and finishing) need to occur in the United States. (See Doc. No. 110, Exs. 24, 64). Defendants did not provide testimony as to how Valco defines "Made in America." Defendants asked all three representatives what "Made in the USA" means and all three provided similar definitions. DNOW and Ferguson's definition of "Made in the USA" is almost indistinguishable from their definition of "Made in America," and Valco states that products marked "Made in the USA" must be made in the U.S., but "every bit of material" need not be produced in the U.S. (Doc. No. 110, Ex. 64 at 95). Any variance in answers between these deponents was likely caused by the fact that they were asked varying questions.

[8] *Tiffany (NJ) Inc. v. eBay Inc.*, 600 F.3d 93, 112–113 (2d Cir. 2010) ("[A] district court must rely on extrinsic evidence [of consumer deception or confusion] to support a finding of an implicitly false message.").

Made in the U.S., Made in America, American Made, Melted and Manufactured in the U.S., Manufactured in the U.S.A. and domestic manufacture(r/d). Moreover, the deponents were sometimes asked about Weldbend, sometimes asked about Boltex, and sometimes asked about both companies at the same time. In light of these inconsistencies, it is unclear how any of the deponents' answers could have been the same.

Next, and least convincingly, Defendants offer screenshots of social media posts to support their argument that: "there are numerous social media and other customer statements evidencing their belief that [Plaintiffs] sold only products made from U.S.-sourced steel." (Doc. No. 110 at 16). Defendants provide screenshots of third-party social media pages which juxtapose Weldbend and Boltex's names with American imagery and slogans such as "Buy American not dumped from China!" or "American Made Matters." (Doc. No. 110, Exs. 57, 59). Defendants do not explain how these images demonstrate that Plaintiffs' advertisements are misleading. These images were posted by an account named "sheridansupplycorp"—Defendants do not explain who this entity is in relation to Plaintiffs. (*See id.*).[9] The Court finds that these exhibits by themselves do not raise a fact issue as to either Plaintiff.

Finally, while the testimony and social media screenshots described above fail to demonstrate a fact issue as to either Plaintiff, Defendants provide additional evidence against Weldbend individually. The proffered emails demonstrate a fact issue as to whether consumers were confused by Weldbend's use of the terms "Domestic" and "USA." (Doc. No. 110, Ex. 68). In the email, a representative from a distributor, Eastern Industrial Supplies, Inc., requested a quote

---

[9] Defendants also provide a screenshot of a Facebook post linking to a Houston Chronicle article (posted by "Bring Back American Jobs And Buy Products Made In The USA") concerning this case. (Doc. No. 110, Ex. 58). The title of the article reads, "Houston Manufacturer stands up for fair trade." (Doc. No. 110, Ex. 56). Again, Defendants fail to explain how this is relevant to consumer confusion. Defendants also fail to explain why these screenshots should not be excluded as hearsay.

13

for flanges and specified that "[r]aw material is required to be domestic." (*Id.*). Rick Purpura, a Weldbend customer service representative, responded that "[e]verything [ ] quoted is U.S.A." (*Id.*). The distributor then sought to clarify whether "USA mean[t] the raw material as well," to which Purpura responded "U.S.A. means it is melted and manufactured in the U.S.A.—Domestic means material from another country, manufactured here." (*Id.*). In a different email exchange, Michael Hammer of Weldbend informed a customer that he could not "guarantee that all material will be Melted and Manufactured in the USA" but that "[a]ll items which are not Domestic are noted as Import." (Doc. No. 110, Ex. 70). These representations seem to conflict—both appear to define "Domestic" in different terms.

Moreover, as discussed in Part 1 above, James Coulas's responses to deposition questions concerning flanges described as "Made in America," "American Made," and "Domestic," further demonstrate that a fact issue remains concerning whether Weldbend's representations about their flanges are misleading to consumers. (Doc. No. 103, Ex. 8 at 69–70, 72, 83–84). Coulas explains his belief that Weldbend flanges that are described as "American Made" could use steel from a U.S. mill or from an offshore mill, meanwhile one of Weldbend's advertisements clearly states that flanges described as "American Made" use *only* steel from U.S. mills. (J. Coulas Depo. Doc. No. 103, Ex. 8 at 69–70) (Doc. No. 110, Ex. 7 at 10). Thus, even if Weldbend's representations that it has products made only from U.S. sourced steel are ultimately found to be literally *true*, based on this record, a reasonable fact-finder could still find it misleading to call products made from non-U.S. sourced steel "American Made," "Made in America," or "Domestic" without clearly defining or qualifying those terms for consumers.

14

Since Defendants failed to raise a fact issue as to whether Boltex's representations are literally false or likely misleading, the analysis in Parts 3 and 4 below concern only Defendants' claims against Weldbend.

### 3. Materiality

In order to satisfy their prima facie case against Weldbend, Defendants are also required to submit evidence establishing that the impliedly false or misleading statements were material to, "that is, they had a tendency to influence the purchasing decisions of, the consumers to which they were directed." *Pizza Hut*, 227 F.3d at 502.

If a trier of fact were to determine that Weldbend's statements were false, then the Court could assume materiality. *See Greater Houston Transp. Co. v. Uber Tech., Inc.*, 155 F. Supp. 3d 670, 702 (S.D. Tex. 2015) (citing *Pizza Hut*, 227 F.3d at 497). The court in *Greater Houston Transp.* explains that a "determination of falsity would eliminate the [claimants'] burden to demonstrate the materiality of [the allegedly false] statements. . . . Therefore, the Court must allow for a determination of the nature of [the] statements before reaching the question of whether [the claimants] should be subject to the increased burden of adducing evidence of materiality." *Id.* (citing *Cooper Tire & Rubber Co. v. Farese*, 423 F.3d 446, 455–56 (5th Cir. 2005)). Similar to the court's finding in *Greater Houston Transp.*, this Court has found a fact issue as to whether Weldbend's statements are literally false or misleading, and "the Court cannot thereby determine at this time whether [Defendants] have adequately demonstrated the materiality of [Weldbend's] representations." *Id.* (citing *Logan v. Burgers Ozark Country Cured Hams Inc.*, 263 F.3d 447, 462 (5th Cir. 2001)). Clearly, Defendants have shown at least one buyer who insisted that the flanges sold to him be made in America with U.S. sourced steel. This Court finds that a genuine issue of material fact remains as to the materiality of Weldbend's statements.

### 4. Injury

Despite these fact issues, Defendants have not pointed to any direct evidence of injury. To state a prima facie case of false advertising, a claimant must establish that it has been or is likely to be injured as a result of the statement at issue. *Derrick*, 2017 WL 3456920, at *5. While Defendants have provided a damages model, the Fifth Circuit has "cautioned against 'conflat[ing] the injury requirement for [a] false advertisement claim with the requirement that [the plaintiff] prove his actual damages in order to obtain relief.'" *Retractable Tech., Inc. v. Becton Dickinson & Co.*, 919 F.3d 869, 877 (5th Cir. 2019) (quoting *Logan v. Burgers Ozark Country Cured Hams Inc.*, 263 F.3d 447, 462–63 (5th Cir. 2001)).

In *Logan*, the Fifth Circuit found that the plaintiff patent owner could not recover profits under a Lanham Act false advertising claim because he "failed to present any evidence that HoneyBaked's profits were attributable to false advertising. Indeed, on appeal, Logan had not pointed to any evidence in the record demonstrating that consumers purchased HoneyBaked's product because of its false advertising that the meat was spirally sliced." 263 F.3d at 465; *see also Seitz v. Envirotech Sys. Worldwide Inc.*, No. CIV.A. H-02-4782, 2007 WL 1795679, at *11 (S.D. Tex. June 19, 2007). In this case, as in *Logan* (and *Seitz*), there is no evidence that Plaintiffs' profits were the result of the allegedly false advertising, nor have Defendants presented or identified evidence as to other damages they suffered as a result of the false advertising alleged.[10]

Moreover, on this summary judgment record, the Court certainly may not assume that Defendants have been or were likely to be injured. Even if some customers were hypothetically

---

[10] Defendants have also requested injunctive relief. "For injunctive relief, a [claimant] must show that the statements are either literally false or likely to mislead . . .consumers and that irreparable harm will result without an injunction." *Seitz*, 2007 WL 1795679, at *11 (citing *Logan*, 263 F.3d at 465). While a genuine issue of material fact remains as to whether Weldbend's claims are literally false or likely to mislead consumers, Defendants have failed to provide evidence of irreparable harm.

16

misled by Weldbend's "American Made" designation, the evidence demonstrates that these customers would not have accepted flanges produced by Defendant Ulma—a foreign flange manufacturer—as substitutes because those customers would be looking to buy strictly U.S. made products. For example, in a series of emails between a Weldbend sales representative and a representative from Columbia Specialty Company named Dolores Bishop, Bishop attempted to obtain a quote on certain Weldbend products and, importantly, clarify whether these products were melted *and* manufactured in the United States. (Doc. No. 110, Ex. 74). The Weldbend representative provided the quote which, according to the email, included a line stating that the "starting material [was] non-China." (*Id.* at 3). Bishop responded to the quote, stating: "I am concerned about the comment [regarding "non-China" material]. The starting material for these fittings and flangesMUST [sic] be from the USA not just non-China," per her customer's request. (*Id.*) (emphasis in the original). Bishop stated in another reply that she "just ha[s] to be diligent with this client" and that she did not "want to lose a customer over something like this." (*Id.* at 2). This is evidence that there are some customers who would buy only U.S. products made in the U.S. with U.S. materials. There is no evidence in the record that this subset of customers, who buy only products made in the U.S. with U.S. materials, would buy Ulma's flanges as a substitute (since there is also no evidence in the record that Ulma sells or manufactures products in the U.S. with U.S. materials). There is a fact issue as to whether Plaintiffs and Defendants compete in the market for normalized flanges, but based on this record, there is no fact issue as to whether Plaintiffs and Defendants compete in the market for flanges made in the U.S. with U.S. materials.

Since Defendants have merely argued that they are entitled to relief without adequately evidencing any injury, Defendants have failed to satisfy the fourth element of their Lanham Act claim as to either Weldbend or Boltex. Since "[t]he failure to prove the existence of any element

of the prima facie case is fatal to the plaintiff's claim," summary judgment in favor of Plaintiffs is proper. *Pizza Hut*, 227 F.3d at 495.

### B. Common Law Unfair Competition Claim

Plaintiffs next move for summary judgment on Defendants' Texas common law claim of unfair competition. (Doc. No. 92 at 33–34). "Unfair competition under Texas law is the umbrella for all statutory and non[-]statutory causes of action arising out of business conduct which is contrary to honest practice in industrial or commercial matters." *Taylor Pub. Co. v. Jostens, Inc.*, 216 F.3d 465, 486 (5th Cir. 2000). Liability for unfair competition must be premised on some "independent substantive tort or other illegal conduct." *Schoellkopf v. Pledger*, 778 S.W.2d 897, 904–05 (Tex. App.—Dallas 1989, writ denied). "Although the illegal act need not necessarily violate criminal law, it must at least be an independent tort." *Taylor Pub.*, 216 F.3d at 486. "Courts in the Fifth Circuit generally analyze a Lanham Act deceptive advertising claim and a Texas unfair competition claim together." *Tercel Oilfield Products USA LLC v. Alaskan Energy Resources, Inc.*, H-13-3139, 2014 WL 645380, at *4 (S.D. Tex. Feb. 19, 2014). Since the Court has found that summary judgment is proper for Defendants' Lanham Act claim, Plaintiffs' Motion for Summary Judgment on Defendants' unfair competition claim is also granted. *Celotex*, 477U.S. at 325; *Schoellkopf*, 778 S.W.2d at 904–05.

### C. False Advertisement Claim – Traceability

Defendants also claim that Weldbend advertises that its flanges are made with "unquestionable traceability." (Doc. No. 68 at 30). The parties dispute whether this "traceability" claim was properly pleaded (or, more specifically, whether it was pleaded at all), and whether Plaintiffs moved for summary judgment on the claim if it indeed was pleaded. (*See* Doc. No. 110 at 3; 129 at 19–20). The Court finds that Defendants sufficiently pleaded the "traceability" claim

as a separate false advertisement, but that Plaintiffs have not adequately moved for summary judgement on this issue. (Doc. No. 68 ¶ 58).

As a result of this apparent confusion, the Court will allow both parties to brief the following issue regarding this (and only this) claim. Plaintiff Weldbend may file a motion for summary judgment on this issue if it does so by July 15, 2019. If Weldbend so moves, Defendants will have until July 31, 2019 to respond. Neither pleading shall exceed ten pages. If Defendants respond, Weldbend may file a five-page reply, if it does so by August 7, 2019.

**IV.    Conclusion**

For the foregoing reasons, the Court **GRANTS** summary judgment in favor of Plaintiffs as to Defendant's counterclaims with the exception of the claims based upon traceability. The Court hereby grants leave for both parties to address the Weldbend traceability issue. If Plaintiffs wish to move for summary judgment on this issue, they must file a brief not exceeding ten pages and must do so by the date stated above. Defendants may respond if they do so by the date setout above. Each pleading should be no longer than ten pages and should cite to specific evidence in the record. A five-page reply may also be filed, but the Court will not wait on this reply to consider the motion.

It is so ordered.

SIGNED at Houston, Texas, this 28th day of June, 2019.

ANDREW S. HANEN
UNITED STATES DISTRICT JUDGE