IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| BOLTEX MANUFACTURING COMPANY, L.P., *et al.*, | § § § § | |
| Plaintiffs, VS. | § § § | CIVIL ACTION NO. 4:17-CV-1400 |
| ULMA PIPING USA CORP., *et al.*, | § § § | |
| Defendants. | § § | |

## MEMORANDUM & ORDER

Before the Court is a Motion for Summary Judgment on Traceability (Doc. No. 208) filed by Plaintiff Weldbend Corporation (hereinafter referred to as "Weldbend" or "Plaintiff").[1] The Defendants Ulma Forja S. Coop. and Ulma Piping USA Corp. (hereinafter referred to as "Ulma" or "Defendants") have filed a Response (Doc. No. 217), and Plaintiff has filed a Reply (Doc. No. 226).

### I. Background

The Court previously wrote more detailed background sections in its prior summary judgment orders in this case (Doc. Nos. 189 & 193) and will only reproduce an abbreviated version here.

This dispute arises between carbon steel flange manufacturers. Plaintiff and Defendants sell their flanges to distributors who in turn sell the flanges to customers. Defendants allege that Weldbend falsely advertises that its goods are sold with "unquestionable traceability" in violation

---

[1] There are two named Plaintiffs in this case, Boltex Manufacturing Company, LP and Weldbend Corporation. Only Weldbend was given leave to move for summary judgment on this issue because all counterclaims against Boltex were dismissed in this Court's prior order. (Doc. No. 193).

1

of § 43(a) of the Lanham Act, codified at 15 U.S.C. § 1125(a).[2] (Doc. No. 68 at 30). Weldbend uses its traceability system to "identify and track flanges from Weldbend's receipt of the incoming material through finishing and inventory placement." (Doc. No. 208 at 2). In other words, Weldbend tells its customers that it keeps track of the originating forges and steel mills from which all of the materials that comprise its flanges originate.

In the last round of summary judgment motions, the parties disputed whether this "traceability" claim was properly pleaded (or, more specifically, whether it was pleaded at all) and whether Weldbend had moved for summary judgment on the claim if it was pleaded. (*See* Doc. No. 110 at 3; 129 at 19–20). The Court held in its prior order that Defendants had sufficiently pleaded the "traceability" claim as a separate form of false advertisement. (Doc. No. 68 ¶ 58). This Court also found that Weldbend had not moved for summary judgment on this issue but granted them leave to do so. (Doc. No. 193 at 19).

The parties have fully briefed the issue, and it is now ripe for decision.

## II. Standards of Review

### A. Summary Judgment

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "The movant bears the burden of identifying those portions of the record it believes

---

[2] Section 1125(a) provides: (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—
    (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
    (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

2

demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986)). Once a movant submits a properly supported motion, the burden shifts to the non-movant to show that the Court should not grant the motion. *Celotex*, 477 U.S. at 321–25.

The non-movant then must provide specific facts showing that there is a genuine dispute. *Id.* at 324; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court must draw all reasonable inferences in the light most favorable to the nonmoving party in deciding a summary judgment motion. *Id.* at 255. The key question on summary judgment is whether a hypothetical, reasonable factfinder could find in favor of the nonmoving party. *Id.* at 248.

### B. False Advertisement Under the Lanham Act

"The Lanham Act was enacted to protect persons engaged in such commerce against unfair competition." *Seven-Up Co. v. Coca-Cola Co.*, 86 F.3d 1379, 1382–84 (5th Cir. 1996) (internal quotation marks omitted). To state a prima facie case of false advertising, a plaintiff must establish: (1) a false or misleading statement of fact about a product; (2) such a statement either deceived, or had the capacity to deceive, a substantial segment of potential customers; (3) the deception is material, in that it is likely to influence the consumer's purchasing decision; (4) the product is in interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the statement at issue. *Derrick Petrol. Servs. v. PLS, Inc.*, Civil Action No. H–14–1520, 2017 WL 3456920, at *5 (S.D. Tex. Aug. 11, 2017). "The failure to prove the existence of any element of the prima facie case is fatal to the plaintiff's claim." *Pizza Hut, Inc. v. Papa John's Int'l, Inc.*, 227 F.3d 489, 495 (5th Cir. 2000).

"To obtain money damages for false advertising under § 43(a) of the Lanham Act, the plaintiff must first demonstrate that the advertisement was (1) literally false; or (2) likely to mislead and confuse customers." *IQ Prods. Co. v. Pennzoil Prods. Co.*, 305 F.3d 368, 375 (5th Cir. 2002). "For a statement to be literally false, the statement must be 'false on its face.'" *Derrick*, 2017 WL 3456920, at *5. "If the statement at issue is shown to be literally false, the court must assume that it actually misled consumers, without requiring any evidence of such deception from the plaintiff." *IQ Prods.*, 305 F.3d at 375; *see also Pizza Hut*, 227 F.3d at 497 ("[P]laintiff need not introduce evidence on the issue of the impact the statements had on customers."). On the other hand, "if the statement is . . . misleading or ambiguous . . . the plaintiff must demonstrate actual deception." *IQ Prods.*, 305 F.3d at 375. "The statements at issue must be a specific and measurable claim, capable of being proved false or being reasonably interpreted as a statement of objective fact." *Pizza Hut*, 227 F.3d at 496 (internal quotation omitted).

### III. Analysis

#### a. Literally False

As stated above, Defendants take issue with Weldbend's claims of "unquestionable traceability." Weldbend argues that Defendants' false advertising claim against it should fail because Weldbend's claim that its flanges are traceable is literally true, and that the modifier "unquestionable" amounts to puffery, which is non-actionable under the Lanham Act.

##### 1. Unquestionable

The Fifth Circuit has defined non-actionable "puffery" as: (1) an exaggerated, blustering, and boasting statement upon which no reasonable buyer would be justified in relying; or (2) a general claim of superiority over comparable products that is so vague that it can be understood as nothing more than a mere expression of opinion. *Pizza Hut, Inc. v. Papa John's Intern., Inc.*, 227

F.3d 489, 497 (5th Cir. 2000). Here, the term "unquestionable" falls into the first category, an exaggerative statement. *See, e.g., Clorox Co. Puerto Rico v. Proctor & Gamble Commercial Co.*, 228 F.3d 24, 38–39 (1st Cir. 2000) (holding that an advertisement claiming that the advertiser's detergent gets clothes whiter than chlorine bleach is "specific and measurable, not the kind of vague or subjective statement that characterizes puffery"); *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1145 (9th Cir. 1997) (holding that defendant's claim that "Less is More" when it comes to its own grass seed is nonactionable puffery; however, defendant's claim that its grass required "50% Less Mowing" was not puffery because it was a specific and measurable claim of superiority based on product testing); *Dyson, Inc. v. Oreck Corp.*, No. 07-9633, 2009 WL 537074, at *8 (E.D. La. Mar. 4, 2009) (holding that a statement that Dyson's vacuum cleaner's weight was "backbreaking" was only puffing, whereas the claim that its own vacuum cleaner "weigh[ed] only nine pounds" was a scientifically verifiable claim and therefore not puffery).[3] In the Weldbend advertisements in the record, Weldbend does not compare its products to other "less traceable" flanges, nor is "unquestionable" otherwise scientifically verifiable; rather, "unquestionable" is the kind of "generalized boasting upon which no reasonable buyer would rely." *Southland Sod Farms*, 108 F.3d at 1145. As such, the Court will limit its analysis only to Weldbend's claim of "traceability."

### 2. Traceability

In their response to Plaintiff Weldbend's Motion for Summary Judgment, Defendants point to the following evidence, claiming that it proves the falsity of Weldbend's statements:

> Weldbend's claims of, *inter alia*, "unquestionable traceability," are literally false because the record shows that Weldbend has significant issues with its traceability system:
> - Weldbend's Material Traceability System requires manual data entry, which creates the opportunity for errors.

---

[3] Cases compiled by McCarthy on Trademarks and Unfair Competition 5th Ed. §27:38

- There are gaps in Weldbend's Material Traceability System. Weldbend's Material Traceability System cannot identify any of the flanges that Weldbend has stamped "Made in the USA" or "USA." In fact, Kevin Coulas admitted that there is nowhere within Weldbend that he could go to locate the flanges that it stamped "Made in the USA" or "USA."
- Weldbend does not segregate U.S. forgings and non-U.S. forgings in its warehouse.
- Weldbend's MTRs do not indicate the country of origin of the steel, rather the customer must have outside knowledge as to the location of the steel mill or specifically contact Weldbend to inquire.
- Weldbend customers have reported receiving flanges with no stamping.

In sum, Weldbend's records are confusing, unreliable and incomplete.

(Doc. No. 217 at 7). While the Court does not necessarily disagree with Defendants' description, none of this evidence raises a fact issue as to whether Weldbend's claims are "literally false."

The parties agree that the definition of traceability is "the ability of a manufacturer to trace a finished flange back to its incoming records" and "ensuring that the material in a flange can be tracked back to a particular lot of steel, made by a particular steel manufacturer." (Doc. No. 217 at 2) (citing K. Coulas Decl. Doc. No. 217 Ex. A ¶ 3). Nothing on Defendants' bulleted list above indicates that Weldbend is unable to trace a finished flange back to its incoming steel records. While there may (or may not) be some flaws in how Weldbend communicates the fruits of its traceability-labor to customers, nothing in the record calls into question Weldbend's internal ability to track the source-material for the flanges.

### b. Likely to Mislead

The Court similarly finds that there is no fact issue regarding whether Weldbend's claims of traceability are likely to mislead customers. *See Pizza Hut*, 227 F.3d at 503 (finding that where a claimant fails to provide evidence that the representation is literally false, it must submit evidence that the statement was, at the very least, misleading or had the capacity to mislead consumers). Defendants point to a number of email excerpts that they argue demonstrate customer confusion

as to Weldbend's traceability process. (Doc. No. 217, Ex. J at 34, 37, 40). Some of these emails indicate that customers either did not receive MTRs (Mill Test Reports)[4] or else received MTRs but were unable to cross-reference the various codes on the report using Weldbend's website. (Doc. No. 217 at 5 n.18). Nevertheless, Defendants fail to produce evidence that Weldbend in fact could not trace these flanges or that these customers failed to receive the information they sought. At most, Defendants have shown that these customers perhaps had to send a few more emails than the customers might have preferred in order to acquire the information the customer needed.

The parties define traceability as the *manufacturer's* ability to trace the origins of the flange, yet all of Defendants' evidence, at most, demonstrates that some customers may have had some issues obtaining or understanding the origin information provided on the MTRs. Defendants have not alleged that Weldbend has falsely advertised the ease or effectiveness of its traceability system for customers; rather, Defendants take issue with Weldbend's claim that it can trace the origin of its own flanges. Defendants have failed to demonstrate a fact issue as to whether Weldbend's claims of traceability are likely misleading to customers because Defendants have not produced evidence demonstrating that Weldbend cannot trace its own flanges.

Since Defendants have failed to demonstrate a fact issue as to either the literal falsity of Weldbend's statement or that its statement is likely misleading customers, the Court need not analyze the remaining elements of a false advertising claim—capacity to deceive or materiality. Nevertheless, the Court notes that similar to its findings in its last summary judgment order, "Defendants have not pointed to any direct evidence of injury." (Doc. No. 193 at 16). Thus, even if Defendants had demonstrated a material issue of genuine fact as to the falsity of Weldbend's

---

[4] A Mill Test Report, or MTR, is an industry-standard report that contains certain specifications about the flange.

traceability advertisements, Defendants' claim still fails. *Pizza Hut*, 227 F.3d at 495 ("The failure to prove the existence of any element of the prima facie case is fatal to the plaintiff's claim.").

## IV. Conclusion

For the foregoing reasons, the Court **GRANTS** summary judgment in favor of Plaintiff as to Defendants' counterclaims on traceability.

It is so ordered.

SIGNED at Houston, Texas, this 9th day of August, 2019.

ANDREW S. HANEN
UNITED STATES DISTRICT JUDGE