IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| BOLTEX MANUFACTURING COMPANY, L.P., *et al.*, *Plaintiffs*, | § § § § | |
| v. | § | CIVIL ACTION NO. 4:17-CV-01400 |
| ULMA PIPING USA CORP., *et al.*, *Defendants*. | § § § § | |

## **ORDER**

On September 27, 2019, the jury found in favor of Plaintiffs, Boltex Manufacturing Company, L.P. ("Boltex") and Weldbend Corporation ("Weldbend"), on all issues. Pursuant to the findings of the jury, the Court hereby enters an interlocutory order in favor of Plaintiffs as a precursor to entering a final judgment.

### I.

Prior to discussing specifics, the Court must note that the Fifth Circuit has not established a definitive statute of limitations to apply in Lanham Act cases. The Lanham Act does not contain its own statute of limitations. Consequently, courts look to the state statute of limitations controlling comparable state causes of action. Most of the courts that have ruled have held that Lanham Act false advertising cases come closest to Texas' theory of common law fraud which has a four-year statute of limitations. *Crystaphase Prod., Inc. v. Criterion Catalysts & Tech., L.P.*, No. 3:17-cv-265, 2018 WL 4266237, at *7 (S.D. Tex. Aug. 20, 2018) ("The most analogous Texas statute of limitations for a Lanham Act claim is the four-year limitations period for fraud claims."); *Alfa Laval, Inc. v. Flowtrend, Inc.*, No. 14-cv-2597, 2016 WL 2625068, at *6 (S.D. Tex. May 9, 2016) ("Because the Lanham Act contains no express limitations period, Courts look to the most analogous state law statute of limitations to determine the applicable laches period. In Texas, the

most analogous limitations period is the four-year period applicable to fraud claims."); *Derrick Manuf. Corp. v. Southwestern Wire Cloth, Inc.*, 934 F. Supp. 796, 805 (S.D. Tex. 1996) ("[T]his Court holds that the fraud limitations period applies for Derrick's Section 43(a) claim. In Texas, the limitations period for fraud is four years."). This Court formulated the jury verdict form to separate the damages that could be awarded if a four-year statute of limitations controlled from those that could be awarded to if a two-year statute applied. The Court did this because it finds that, while the majority of cases favor the four-year statute, a very credible argument could be made that the closest parallel in Texas law to a Lanham Act unfair advertising claim is Texas' common law cause of action for unfair competition, not fraud. Unfair competition in Texas has a two-year limitations statute, and reasonable minds could differ on the question as to whether the Fifth Circuit, when it rules, will adopt the two-year statute of limitations rather than four-year statute favored by the majority of trial courts who have had to face the issue.

That being said, this Court, for the purposes of this case, finds the four-year statute to be more appropriate and applies it to the verdict found by the jury.

## II.

The Court finds that Plaintiffs have prevailed not only on their claims based upon the Lanham Act, but also upon their claims of unfair competition based upon the common law of the State of Texas. While Plaintiffs have received favorable jury findings on all claims, they are not entitled to multiple recoveries for the same loss. Therefore, Plaintiffs must elect between the remedies upon which they have prevailed.

The jury made the following findings and Boltex was awarded the following damages pursuant to the Lanham Act:

2

Actual Damages:

    a)   May 5, 2013 to May 4, 2015:    $250,000.00
    b)   May 5, 2015 to May 31, 2019:   $400,000.00

    Total Damages:               $650,000.00

Under the Texas law of unfair competition, Boltex was awarded the following damages:

    Actual Damages:          $400,000.00
    Punitive Damages:       $800,000.00
    Total Damages:           $1,200,000.00[1]

Under the Lanham Act, Weldbend was awarded the following damages:

Actual Damages:

    a)   May 5, 2013 to May 4, 2015:    $100,000.00
    b)   May 5, 2015 to May 31, 2019:   $200,000.00

    Total Damages:               $300,000.00

Under the Texas law of unfair competition, Weldbend was awarded the following damages:

    Actual Damages:          $200,000.00
    Punitive Damages:       $400,000.00
    Total Damages:           $600,000.00

Plaintiffs must elect between the above two options. They can elect under Texas common law to recover actual damages from May 5, 2015 to May 31, 2019 plus punitive damages, or they can elect to recover under the Lanham Act for damages from May 5, 2013 to May 31, 2019, but this election would not include an award of punitive damages.

### III.

The jury also made findings that support a judgment disgorging profits made by Ulma Piping USA Corp. ("Ulma") from its false advertisements of its flanges. The jury found that those

---

[1] Punitive damages in this case could only be based upon the Texas common law claim of unfair competition, and are thus limited by Texas law to two times the economic damages. TEX. CIV. PRAC. & REM. CODE § 41.008. While Defendants claim there is no evidence supporting punitive damages, the Court finds ample evidence of malice in Ulma's conduct.

profits totaled $26 million. Plaintiffs claim they should be awarded this amount (although they do not describe how this amount should be divided between them). Obviously, Defendants oppose any order of disgorgement.

Following a finding of liability, a prevailing Lanham Act plaintiff is entitled, "subject to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action." 15 U.S.C. § 1117(a). The Lanham Act commits this calculation to the discretion of the district court. *See id.* ("The court shall assess such profits and damages or cause the same to be assessed under its direction."). Further, "[i]f the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case." *Id.* Consistent with this, the Fifth Circuit provides district courts "great latitude to determine the nature of the infringing conduct and its adverse effects, if any, on the plaintiff, and to fashion relief accordingly." *Retractable Techs., Inc. v. Becton Dickinson & Co.*, 919 F.3d 869, 874–75 (5th Cir. 2019) (internal citations, quotations, and alterations omitted). In fashioning this relief, this Court is wary that, in cases involving competitors, often "over-compensation may result if plaintiff seeks both damages for lost profits on sales diverted to the infringer and the profits made on those sales by the infringer." 5 McCarthy on Trademarks and Unfair Competition § 30:73 (5th ed.).

This Court finds that disgorgement is a question for this Court and therefore treats the jury's answers as advisory. It, like the jury, also finds that disgorgement is an appropriate remedy that should be applied. Nevertheless, it does not find that the total amount of profits that the jury found were derived from the false advertising should be awarded to Boltex and Weldbend. This would create a windfall for Plaintiffs whose own experts testified to possess less than 25% of the

flange market even after Ulma is hypothetically removed from the market. Consequently, if this Court applied the testimony offered by Plaintiffs' own experts, their share of the flange market in which they all competed was 11.6% for Boltex and 10.4% for Weldbend.[2] This Court finds that testimony directly correlates to the general evidence adduced at trial concerning the markets in which these parties competed and also when one considers the evidence discussing the market areas in which they did not compete. Consequently, this Court finds it equitable and appropriate to award disgorgement of the profits gained by Defendants due to its false advertising in the amount of $3,016,000.00 to Boltex and $2,704,000.00 to Weldbend in addition to the Lanham Act damages described above *if* they opt to recover damages under the Lanham Act.

## IV.

This Court hereby instructs the Plaintiffs to individually file with this Court their election to either recover under the Lanham Act ($3,666,000.00 for Boltex and $3,004,000.00 for Weldbend) or under Texas common law ($1,200,000.00 for Boltex and $600,000.00 for Weldbend) by November 15, 2019. Each plaintiff is to file a bill of costs (as interpreted under federal law) if they intend to seek recovery of costs, also by November 15, 2019. Defendants may respond to the request for costs if such response is filed by November 27, 2019.

## V.

This Court does not find this case to be "exceptional" as that term is defined in the attorneys' fees context and therefore declines to award such fees. In the Fifth Circuit, a case is "exceptional" if "(1) in considering both governing law and the facts of the case, the case stands

---

[2] The Court acknowledges that the Plaintiffs' damages expert also opined concerning the percentages of their market share that would rise if Defendants' market share were removed and redistributed to the other participants in the marketplace. The Court did not use these percentages as that would not be relevant to the disgorgement of the actual profits achieved by virtue of the false advertising and would also arguably lead to a double recovery as the Plaintiffs are already receiving damages by virtue of the jury's verdict.

5

out from others with respect to the substantive strength of a party's litigating position; or (2) the unsuccessful party has litigated the case in an 'unreasonable manner.'" *Baker v. DeShong*, 821 F.3d 620, 625 (5th Cir. 2016). While the Plaintiffs in this case no doubt believe that Defendants' positions were and are unsubstantiated and that the positions the Ulma entities adopted in this lawsuit were unsustainable, and therefore that their steadfast refusal to settle this matter was unreasonable, this Court cannot reach that conclusion.

Defendants quite legitimately argued and produced a fair amount of evidence that the Plaintiffs and Defendants did not compete and consequently Plaintiffs were not damaged by any actions of the Defendants and if damaged at a substantially lesser amount than claimed. While the jury did not totally agree with Defendants' position, it did not completely agree with the amount of damages claimed by the Plaintiffs. Defendants have the right to litigate liability and damages and it is not an unreasonable litigation position—even in the face of what some might consider overwhelming evidence of liability—to vehemently contest whether a plaintiff has actually suffered any damages due to its alleged misconduct.[3]

This holding is not meant to disparage the Plaintiffs' litigation positions or the professionalism of their counsel as the former were both heartfelt and legally reasonable and the latter was both competently and zealously effectuated. Nevertheless, this Court does not find the Defendants' contentions to be unreasonable, nor does it find the positions taken by, and the conduct of, their counsel to fall below the standards of professional conduct which this Court expects.

---

[3] Indeed in a sister case filed against a different defendant, the court actually granted summary judgment for the defendants due to a failure by Plaintiffs to show that they had been injured as a result of the alleged false advertisements. *Boltex Manuf. Co., LP v. Galperti, Inc.*, H-17-1439, 2019 WL 2568338 (S.D. Tex. June 21, 2019).

6

## VI.

This Court also grants the request for a permanent injunction and that will be addressed by a separate order. The Court orders Plaintiffs to provide the Court with its proposed injunctive language by November 15, 2019. As above, Defendants may respond to their proposal by November 27, 2019.

SIGNED at Houston, Texas this 1st day of November, 2019.

Andrew S. Hanen
United States District Judge